**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X

CBC SETTLEMENT FUNDING, LLC,                    Case No.: 7:24-cv-04668-NSR

                      Plaintiff(s),

      -against-

EVERLAKE ASSIGNMENT COMPANY f/k/a
ALLSTATE ASSIGNMENT COMPANY,
WILTON REASSURANCE LIFE COMPANY
OF NEW YORK f/k/a ALLSTATE LIFE
INSURANCE COMPANY OF NEW YORK, and
DEMIRAR LOWERY,

                    Defendant(s).

------------------------------------X

**MEMORANDUM OF LAW OF EVERLAKE ASSIGNMENT COMPANY AND**
**WILTON REASSURANCE LIFE COMPANY OF NEW YORK IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S VERIFIED PETITION**

COZEN O'CONNOR

One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103

## <u>TABLE OF CONTENTS</u>

Page

Introduction ............................................................................................................. 1

Background .............................................................................................................. 3

      A.     The Settlement Agreement, Infant's Compromise Order, Qualified
            Assignment, and Annuity ................................................................... 4

      B.     The Proposed Transfer and Petition ................................................... 5

Law and Argument .................................................................................................. 6

I.     Legal Standard for Motion to Dismiss .............................................................. 6

II.    The Court Lacks Subject Matter Jurisdiction to Hear the Petition ................... 8

III.   CBC Settlement Has Not Alleged a "Case" or "Controversy" ....................... 10

IV.   The Petition Fails to State A Claim Upon Which Relief Can Be Granted Because
       The Proposed Transfer Would Violate the Anti-Assignment Language in the
       Settlement Agreement and Related Contracts in Contravention of Well-
       Established New York Law .............................................................................. 10

      A.     Contractual Anti-Assignment Clauses Are Enforceable Under New York
            Law ................................................................................................... 10

      B.     The Proposed Transfer Violates the Anti-Assignment Language in the
            Settlement Agreement and Related Contracts ..................................... 13

Conclusion ............................................................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Matter of 321 Henderson Receivables Origination LLC (Logan)*,
    19 Misc. 3d 504, 856 N.Y.S.2d 817 (N.Y. Sup. Ct. 2008) ................................................11, 16

*In re Advance Funding LLC*,
    51 Misc. 3d 1215(A), 38 N.Y.S.3d 830 (N.Y. Sup. Ct. 2016)..........................................11, 14

*Allhusen v. Caristo Constr. Corp.*,
    303 N.Y. 446, 103 N.E.2d 891 (1952)...................................................................................15

*Am. Farms, LLC v. John Hancock Assignment Co.*,
    61 Misc. 3d 1203(A), 110 N.Y.S.3d 794 (N.Y. Sup. Ct. 2018).............................................2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................6, 7

*C.U. Annuity Service Corp. v. Young*,
    281 A.D.2d 292, 722 N.Y.S.2d 236 (App. Div. 2001) ......................................................14, 16

*Carney v. Adams*,
    592 U.S. 53 (2020).................................................................................................................10

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016)......................................................................................................6

*CAT IV, LLC, v. Everlake Settlement Corp.*,
    Index No. 2023-2197 (N.Y. Sup. Ct., Schenectady Cty. April 23, 2024) .............................11

*CBC Settlement Funding, LLC v. Athene London Assignment Co.*,
    Index No. 2023-1409 (N.Y. Sup. Ct., Schenectady Cty. Nov. 6, 2023)................................11

*CDC Newburgh Inc. v. STM Bags, LLC*,
    692 F. Supp. 3d 205 (S.D.N.Y. 2023).....................................................................................7

*Cline v. Avery Abrasives, Inc.*,
    96 Misc. 2d 258, 409 N.Y.S.2d 91 (Sup. Ct. 1978)................................................................13

*Cortec Inds., Inc. v. Sum Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991)......................................................................................................7

*Dones v. E. Air Lines, Inc*.,
    408 F. Supp. 1044 (D.P.R. 1975)............................................................................................8

*In re Emerald Funding Corp. (Brown)*,
    Index No. 2003/3376 (N.Y. Sup. Ct., Monroe Cty. June 4, 2003), Mem.
    Decision ....................................................................................................................11

*First Providian, LLC v. Evans*,
    852 So. 2d 908 (Fla. Dist. Ct. App. 2003) ...........................................................15

*In re Foreman*,
    365 Ill. App.3d 608, 850 N.E.2d 387 (2006) ........................................................12

*Fox-Greenwald Sheet Metal Co. v. Markowitz Bros.*,
    452 F.2d 1346 (D.C. Cir. 1971) ............................................................................16

*Galu v. Attias*,
    923 F. Supp. 590 (S.D.N.Y. 1996) .........................................................................8

*Gmurzynska v. Hutton*,
    257 F. Supp. 2d 621 (S.D.N.Y. 2003).....................................................................7

*Gunn v. Minton*,
    568 U.S. 251 (2013)................................................................................................8

*Hendrickson v. United States*,
    791 F.3d 354 (2d Cir. 2015)....................................................................................9

*In re Hughes*,
    513 S.W.3d 28 (Tex. App. 2016) ..........................................................................12

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinne*,
    456 U.S. 694 (1982)................................................................................................8

*In re J.G. Wentworth Originations, LLC*,
    51 Misc.3d 1216(A), 38 N.Y.S.3d 831 (N.Y. Sup. Ct. 2016)...............................14

*J.G. Wentworth Originations LLC v. Hall*,
    42 Misc. 3d 837 (N.Y. Sup. Ct., Yates Cty, 2014) ..............................................11

*J.G. Wentworth Originations, LLC v. Robinson*,
    No. 112976/14 (N.Y. Sup. Ct., Albany Cty. March 27, 2014) ..............................14

*Johnson v. J.G. Wentworth Originations, LLC*,
    284 Or. App. 47, 391 P.3d 865 (2017)..................................................................12

*L. First Fin., LLC v. Jamestown Life Ins. Co.*,
    72 Misc. 3d 1207(A), 148 N.Y.S.3d 680 (N.Y. Sup. Ct. 2021)...............................2

*In re Lobello*,
    28 Misc. 3d 1203(A), 957 N.Y.S.2d 636 (N.Y. Sup. Ct. 2010)............................11

*Lowell v. Lyft, Inc.*
   352 F. Supp. 3d 248 (S.D.N.Y. 2018) ................................................................6

*Martin v. Bottom Line Concepts, LLC*,
   No. 23 CIV. 8510 (PAE), 2024 WL 1119982 (S.D.N.Y. Mar. 14, 2024) ...............7

*Mastafa v. Chevron Corp.*,
   770 F.3d 170 (2d Cir. 2014) ................................................................................7

*Morrison v. Nat'l Austl. Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008) ................................................................................6

*Nike, Inc. v. Already, LLC*,
   663 F.3d 89 (2d Cir. 2011) ..................................................................................6

*Oden v. Chemung Cnty. Indus. Dev. Agency*,
   87 N.Y.2d 81, 661 N.E.2d 142 (1995) ................................................................13

*Peachtree Settlement Financing, LLC v. Loftin*,
   No. 1089321-12 (N.Y. Sup. Ct., Albany Cty. Nov. 13, 2012) .............................14

*Peachtree Settlement Funding, LLC v. Hernandez*,
   No. 2602122012, 2012 WL 10028450 (N.Y. Sup. Ct. June 19, 2012)...................11

*Pinnacle Cap., LLC v. O'Bleanis*,
   214 A.D.3d 913, 187 N.Y.S.3d 51 (App. Div. 2023) ...........................................2

*Priestley v. Panmedix Inc.*,
   18 F. Supp. 3d 486 (S.D.N.Y. 2014) ...................................................................9

*In Re Rains*,
   473 S.W.3d 461 (Tex. Ct. App. 2015) .............................................................1, 2

*Rapid Settlements, Ltd. v. Dickerson*,
   941 So. 2d 1275 (Fla. Dist. Ct. App. 2006) .......................................................12

*Ross v. AXA Equitable Life Ins. Co.*,
   115 F. Supp. 3d 424 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017).......10

*RSL Funding, LLC v. Alford*,
   239 Cal. App. 4th 741, 190 Cal. Rptr. 3d 917 (2015).............................................1

*In re Settlement Capital Corp. for Approval of Transfer of Structured Settlement
Payment Rights of Maria S. Illescas in Accordance with General. Obligations
Law*,
   No. 103992/03, 2003 WL 26094929 (N.Y. Sup. Ct., Dec. 22, 2003) ....................16

*Singer Asset Fin. Co., L.L.C. v. Bachus*,
   294 A.D.2d 818, 741 N.Y.S.2d 618 (App. Div. 2002) .........................................14

*Slamow v. Delcol*,
    174 A.D.2d 725, 571 N.Y.S.2d 335 (App. Div. 1991) ........................................14

*Structured Asset Funding, LLC d/b/a 123 LumpSum v. Prudential Assigned*
    *Settlement Services Corp.*,
    Case. No. MMX CV 094009835S, 2009 Conn. Super. LEXIS 1059 (Conn.
    Super. Ct. Apr. 16, 2009) .........................................................................................2, 5

*Matter of the Petition of J.G. Wentworth Originations, LLC (Radcliffe)*,
    Index No. 30364/10 (Sup. Ct., Westchester Co., March 23, 2011) ........................11

*Thomas v. Westchester Cnty. Health Care Corp.*,
    232 F. Supp. 2d 273 (S.D.N.Y 2002) .......................................................................7

*Tigue v. Commercial Life Ins. Co.*,
    219 A.D.2d 820, 631 N.Y.S.2d 974 (App. Div. 1995) ............................................14

*In re Transfer of Structured Settlement Rts. by Pikula*,
    No. C3-05-1487, 2005 WL 3963777 (Minn. Dist. Ct. Nov. 3, 2005) .....................12

*Tulczynska v. Queens Hosp. Ctr.*,
    No. 17 CIV. 1669 (DAB), 2019 WL 6330473 (S.D.N.Y. Feb. 12, 2019) ................7

*University Mews Assocs. v. Jeanmarie*,
    122 Misc. 2d 434, 471 N.Y.S. 2d 457 (N.Y. Sup. Ct., N.Y. Cty. 1983).................15

**Statutes**

26 U.S.C. § 5891(2)(B)(i) ................................................................................................8

26 U.S.C. § 5891(b)(1) ...................................................................................................3

26 U.S.C. § 5891(b)(2) ...................................................................................................8

28 U.S.C. § 1332 .............................................................................................................8

N.Y. GOL § 5-1701(f) ..................................................................................................13

N.Y. GOL § 5-1705(b)(ii) ..............................................................................................9

N.Y. GOL § 5-1706(d) ..................................................................................................13

N.Y. GOL § 5-1708(e) ..................................................................................................13

N.Y. Insurance Law §3212(d) ......................................................................................15

Internal Revenue Code Section 130 ...........................................................................5, 15

Internal Revenue Code Section 5891 .............................................................................3

N.Y. Statutes Law § 301b .............................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)................................................................................1, 6

Fed. R. Civ. P. 12(b)(6)............................................................................1, 6, 7

Fed. R. Civ. P. 12(h)(3)...................................................................................6

Fed. R. Civ. P. 56...........................................................................................7

U.S. Const. Art. III, § 2...............................................................................9, 10

Interested parties Everlake Assignment Company f/k/a Allstate Assignment Company ("Everlake Assignment") and Wilton Reassurance Life Company of New York f/k/a Allstate Life Insurance Company of New York ("Wilton Re Life NY"), by their attorneys Cozen O'Connor, submit this Memorandum of Law in Support of Their Motion to Dismiss ("Motion") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for an order dismissing the Verified Petition ("Petition" or "Pet.") of CBC Settlement Funding, LLC ("CBC Settlement") with prejudice.

## Introduction

CBC Settlement is a factoring company that purchases structured settlement payment rights. Everlake Assignment is the owner and Wilton Re Life NY is the issuer of structured settlement annuity contract no. SSNY00047A (the "Annuity"), which funds certain periodic payments to Demirar Lowery ("Ms. Lowery"). Everlake Assignment and Wilton Re Life NY are contractually obligated to make the periodic payments, when they come due, to Ms. Lowery. CBC Settlement – otherwise having no relation to Everlake Assignment, Wilton Re Life NY or Ms. Lowery – now seeks to purchase a portion of Ms. Lowery's future monthly payments due under a structured settlement agreement and the related Annuity. To effectuate their agreement, CBC Settlement with the concurrence of Ms. Lowery seek this Court's approval of the terms of their agreement.

To protect structured settlement payees, all fifty states, including New York, have enacted structured settlement protection acts ("SSPAs"), which require state court approval before a factoring transaction can be effectuated. *See RSL Funding, LLC v. Alford*, 239 Cal. App. 4th 741, 745, 190 Cal. Rptr. 3d 917, 920 (2015) (stating that the California SSPA was adopted "to protect structured settlement payees from exploitation by factoring companies"); *In Re Rains*, 473 S.W.3d 461, 463 (Tex. Ct. App. 2015) (stating that "[e]nactment of the [Texas SSPA] arose from the

legislature's desire to protect beneficiaries of structured settlements from transferring their interests for inadequate compensation").[1] This is the case in New York:

> [T]he purpose of the SSPA, as reflected in the legislative materials, was to establish "procedural safeguards for those who sell settlements that are awarded as a result of litigation," due to a recognition that "[m]any of the people who receive such settlements are being compensated for very serious, debilitating injuries, and have been unfairly taken advantage of in the past by the businesses that purchase their settlements" (Mem. in Support, Bill Jacket, L 2002, ch 537 at 5).

*Pinnacle Cap., LLC v. O'Bleanis*, 214 A.D.3d 913, 915, 187 N.Y.S.3d 51 (App. Div. 2023) (emphasis added); *see also L. First Fin., LLC v. Jamestown Life Ins. Co.*, 72 Misc. 3d 1207(A), at *2, 148 N.Y.S.3d 680 (N.Y. Sup. Ct. 2021); *Am. Farms, LLC v. John Hancock Assignment Co.*, 61 Misc. 3d 1203(A), at *2, 110 N.Y.S.3d 794 (N.Y. Sup. Ct. 2018).

These state SSPAs serve to regulate factoring transactions, which may be approved only if the appropriate state court finds that the transaction meets all of the requirements of the pertinent SSPAs. Indeed, these state statutes are *not* intended to be an endorsement of any particular factoring transaction or a "rubber-stamp" approval process for factoring transactions in general. *See Rains*, 473 S.W.3d at 465. Similarly, the New York Structured Settlement Protection Act, N.Y. Gen. Oblig. Law ("GOL") § 5-1701 *et seq.* (the "New York Act"), was intended, in part, to prevent the dissipation of funds specifically established to be paid in the future based on the anticipated needs of personal injury claimants by requiring prior approval of such transactions based on a "best interest" determination to be made by the appropriate New York state court.

---

[1] *See also, e.g.*, *Structured Asset Funding, LLC d/b/a 123 LumpSum v. Prudential Assigned Settlement Services Corp.*, Case. No. MMX CV 094009835S, 2009 Conn. Super. LEXIS 1059, at *17 (Conn. Super. Ct. Apr. 16, 2009) ("Structured Settlement Protection Acts have been enacted in Connecticut and many other states to protect payees from exploitation by factoring companies. The various requirements are designed to limit the opportunity for factoring companies to take advantage of payees who may lack an understanding of finance and succumb to pressure to sell payment rights for amounts far below fair market value.") (internal citations omitted).

In 2002, also in an effort to limit the opportunity for factoring companies to take advantage of payees, Congress enacted Section 5891 of the Internal Revenue Code which imposes a 40% excise tax on any person who acquires structured settlement payment rights in a factoring transaction. *See* 26 U.S.C. § 5891 (the "Tax Code"). This Tax Code section provides that the excise tax does not apply if the transfer is approved pursuant to a "qualified order." 26 U.S.C. § 5891(b)(1).

Neither the New York Act nor the Tax Code section provide for or anticipate a federal venue or a federal cause of action. Moreover, approval under the New York Act is a state procedure that involves no "case or controversy" as anticipated in Article III of the Constitution. Despite the fact this Court is a court of limited jurisdiction, and despite the fact CBC Settlement's Petition does not seek resolution of an injury resulting from alleged conduct by alleged defendants, CBC Settlement has refused to dismiss this matter. Consequently, because the New York Act explicitly provides that the structured settlement obligor and annuity issuer are "interested parties" entitled to notice and an opportunity to object to any transaction, Everlake Assignment and Wilton Re Life NY have been forced to file this Motion. Given there is no true "case or controversy" and given that nether the Tax Code nor the New York Act creates federal jurisdiction, this Court lacks subject matter jurisdiction to issue an advisory opinion approving the proposed transaction between CBC Settlement and Ms. Lowery. Furthermore, even if this Court had subject matter jurisdiction – which it does not – the proposed transaction is precluded by the terms of the underlying settlement agreement and related Annuity. Consequently, the Petition must be dismissed with prejudice.

## **Background**

The following facts are drawn from the Petition and documents referenced therein.

**A.      The Settlement Agreement, Infant's Compromise Order, Qualified Assignment, and Annuity**

On or about November 11, 2003, Velda Lowery, individually and as legal guardian of Ms. Lowery, then a minor, entered into a written structured Settlement Agreement and Release (the "Settlement Agreement") with a certain tort defendant in resolution of a personal injury claim of Ms. Lowery. (Pet. ¶ 7; Ex. B.) The Settlement Agreement provided for certain periodic payments (the "Periodic Payments") to be made to Ms. Lowery as follows:

> ➢ annual payments of $20,000.00 each, due August 1, 2004 through and including August 1, 2007;
> ➢ monthly payments of $300.00 each, due August 1, 2008 through and including July 1, 2012;
> ➢ monthly payments of $500.00 each, due August 1, 2011 through and including July 1, 2014;
> ➢ Monthly payments of $700.00 each, due August 1, 2014 through and including July 1, 2019;
> ➢ Monthly payments of $900.00 each, due August 1, 2019 through and including July 1, 2024;
> ➢ monthly payments of $1,200.00 each, due August 1, 2024 through and including July 1, 2029;
> ➢ monthly payments of $1,500.00 each, due August 1, 2029 through and including July 1, 2034;
> ➢ monthly payments of $2,500.00 each, due August 1, 2034 through and including July 1, 2039; and
> ➢ monthly payments of $3,977.08 each, due August 1, 2039 through and including July 1, 2049.

Significantly, the Settlement Agreement expressly prohibits Ms. Lowery from assigning the Periodic Payments. It states, in relevant part, as follows:

> *The future periodic payments described in para. B (i) (2) above cannot be accelerated, deferred, increased or decreased by the Plaintiffs …, nor shall the Plaintiffs have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part thereof, by assignment or otherwise. Any attempt by Plaintiffs to so assign, anticipate, pledge or encumber any annuity payments shall be null and void … Transfer of the periodic payments is thus prohibited by the terms of this structured settlement and may otherwise be prohibited or restricted under applicable law.*

*See* Ex. B, at ¶ C (emphasis added). The Settlement Agreement also provides that it "shall be construed and interpreted in accordance with the laws of the State of New York." *See id.* at ¶ P.

The Settlement Agreement was approved pursuant to the Infant's Compromise Order (the "Minor's Order") on November 24, 2003. (Pet. ¶ 4; Pet. Ex. A.) The Minor's Order specifically provide that the "best interests of the infant Plaintiff will be served by said settlement." *See* Minor's Order, p. 1. It further directed Velda Lowery, as the aunt and legal guardian of Ms. Lowery, to execute any release and other documents required to effectuate the settlement. *Id.* at p. 4.

As contemplated by the Settlement Agreement, pursuant to a "qualified assignment" within the meaning of Section 130 of the Internal Revenue Code (the "Qualified Assignment"), the underlying defendant assigned to Everlake Assignment the obligation to provide the Periodic Payments to Ms. Lowery. (Pet. ¶ 8; Ex. C.) The Qualified Assignment also precludes the assignment of the Periodic Payments. It expressly states as follows:

> *None of the Periodic Payments may be* accelerated, deferred, increased or decreased, and may not be anticipated, *sold, assigned*, or encumbered.

*See* Exh. C, ¶ 3 (emphasis added). The Qualified Assignment is also governed by New York law. *Id.* at ¶ 5.

To fund the obligation to make the Periodic Payments to Ms. Lowery, Everlake Assignment purchased the Annuity from Wilton Re Life NY. (Pet. ¶ 9; Ex. D.) The Annuity is a legal contract between Everlake Assignment and Wilton Re Life NY. Similar to the Settlement Agreement and Qualified Assignment, the Annuity specifically states that "[*p*]*ayments may not be* anticipated, *assigned* or pledged as collateral." *See* Ex. D, p. 4 (emphasis added).

### B.        The Proposed Transfer and Petition

On or about May 21, 2024, Ms. Lowery voluntarily entered into a Purchase and Sale Agreement (the "Purchase Agreement") with CBC Settlement. (Pet. ¶ 12; Pet. Ex. C.) Specifically, CBC Settlement has agreed to purchase Ms. Lowery's right to monthly payments of $1,200.00 each, due August 1, 2039 through and including July 1, 2049, totaling $264,000.00, in exchange for a payment to Ms. Lowery of only $25,000.00. (Pet ¶¶ 13-17; Pet. Exs. C & D.) Ms. Lowery

has previously been involved in eleven (11) prior attempts to transfer portions of her Periodic

Payment rights. (Pet. Ex. E, p. 2, ¶ 9.) The Supreme Court of New York, Orange County, where

Ms. Lowery resides, has denied the last three attempts to assign portions of her payment rights.

*See* Ex. E. According to Ms. Lowery's Affidavit, she seeks the Court's approval of her transaction

with CBC Settlement. (Pet. Ex. E, p. 3, ¶¶ 10-13.)

## Law and Argument

### I.    Legal Standard for Motion to Dismiss

A case should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when

the court lacks the statutory or constitutional power to adjudicate the matter. *Nike, Inc. v. Already,*

*LLC*, 663 F.3d 89, 94 (2d Cir. 2011). Plaintiff has the burden of proving by a preponderance of the

evidence that subject matter jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167,

170 (2d Cir. 2008). In determining whether subject matter jurisdiction exists, the Court accepts as

true the material facts of the complaint, and may refer to evidence outside the pleadings to resolve

any disputed jurisdictional facts. *Lowell v. Lyft, Inc.* 352 F. Supp. 3d 248, 254 (S.D.N.Y. 2018).

Without subject matter jurisdiction, "the district court lacks the power to adjudicate the merits of

the case." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016); *see also* Fed. R. Civ.

P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court

must dismiss the action.").

To survive a motion to dismiss under Rule 12(b)(6), a pleading must give fair notice of a

legally cognizable claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw a reasonable inference *that the defendant is liable for the misconduct alleged*."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Although a court must take all

factual allegations as true, legal conclusions couched as factual allegations are insufficient.

*Twombly*, 550 U.S. at 555. Moreover, "threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, [also] do not suffice." *Mastafa v. Chevron Corp*., 770 F.3d 170, 172 (2d Cir. 2014) *citing Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009). Nor must a court accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 631 (S.D.N.Y. 2003). Accordingly, pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Martin v. Bottom Line Concepts, LLC*, No. 23 CIV. 8510 (PAE), 2024 WL 1119982 (S.D.N.Y. Mar. 14, 2024). Thus, when the claim does not cross the line from merely conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

On a motion to dismiss, "'[a]ny written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference,' as well as any matters of which judicial notice may be taken, are deemed included in the complaint, so the Court may consider them without converting the motion to dismiss into a motion for summary judgment." *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 220 (S.D.N.Y. 2023); *Cortec Inds., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id*.; *see also Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y 2002) ("Documents that are integral to plaintiff's claims may also be considered, despite plaintiff's failure to attach them to the complaint."). Importantly, when a party's pleading is undermined by its own court submissions, courts are more likely to consider extrinsic documents on a motion to dismiss. *Tulczynska v. Queens Hosp. Ctr.*, No. 17 CIV. 1669

(DAB), 2019 WL 6330473, at *5 (S.D.N.Y. Feb. 12, 2019) ("There is no principled reason for a district court to subject the defendant to the additional expense and burden of considering the same matter later on a motion for summary judgment.").

## II.    The Court Lacks Subject Matter Jurisdiction to Hear the Petition

It is axiomatic that federal courts are courts of limited jurisdiction and possess "only that power authorized by [the] Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (*quoting Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Defects in subject matter jurisdiction cannot be waived. *See Galu v. Attias*, 923 F. Supp. 590, 594 (S.D.N.Y. 1996). Moreover, parties cannot confer subject matter jurisdiction on a federal court. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinne*, 456 U.S. 694, 702 (1982) ("no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant.").

Here, CBC Settlement relies upon the New York Act and the Tax Code to support jurisdiction.[2] However, federal jurisdiction is dependent upon federal law. State law does not create federal jurisdiction. Nothing in the New York Act or the Tax Code establishes federal jurisdiction for the mandatory judicial approval of a transfer petition. The Tax Code provides for the avoidance of an excise tax on a factoring company in connection with a transfer of structured settlement payment rights that has been approved pursuant to a "qualified order." 26 U.S.C. § 5891(b)(2). The Tax Code further provides that a "qualified order" is one issued "**under the authority of an applicable State statute by an applicable State court**." 26 U.S.C. § 5891(2)(B)(i). The New York Act is state law and does not create federal jurisdiction. While the

---

[2] CBC Settlement also asserts jurisdiction based upon diversity pursuant to 28 U.S.C. § 1332. However, even if diversity may exist, this Court lacks jurisdiction over the claim raised. *See, e.g., Dones v. E. Air Lines, Inc.*, 408 F. Supp. 1044, 1046 (D.P.R. 1975) ("the fact that diversity jurisdiction exists does not really help plaintiffs since the Court does not have jurisdiction over the subject matter.")

New York Act indicates that a petition can be brought "in any court which approved the structured settlement agreement," GOL § 5-1705(b)(ii), that does not independently establish federal jurisdiction. Nothing in the New York Act establishes federal jurisdiction over a transfer of structured settlement payment rights.

CBC Settlement also attempts to assert this Court has ancillary jurisdiction by virtue of the Minor's Order. Specifically, CBC Settlement claims that because this Court approved the underlying structured settlement, it has jurisdiction to approve a transfer of those payment rights. However, such a claim is without merit. There is nothing in the Minor's Order expressly stating that this Court retained jurisdiction over the settlement agreement or that it incorporated the terms of the settlement agreement into the order. The doctrine of ancillary jurisdiction allows a district court to take actions necessary "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Hendrickson v. United States*, 791 F.3d 354, 360 (2d Cir. 2015). "The Supreme Court has cautioned against the exercise of jurisdiction over proceedings that are entirely new and original, or where the relief sought is of a different kind or a different principle than that of the prior decree." *Priestley v. Panmedix Inc.*, 18 F. Supp. 3d 486, 495 (S.D.N.Y. 2014) (quoting *Peacock v. Thomas*, 516 U.S. 349, 358 (1996)).

CBC Settlement is not attempting to enforce the Settlement Agreement or Minor's Order. To the contrary, it is seeking to undermine those documents. As noted above, the Minor's Order states that the settlement is in the best interest of Ms. Lowery. By implication, that means that her receiving the Periodic Payments, when they come due, is in her best interest. In fact, the three most recent decisions of the Supreme Court of New York, Orange County, have concluded that Ms. Lowery's assignment of her future payment rights is not in her best interest and have denied her attempts to factor her payment rights. *See* Ex. E.

This Court lacks subject matter jurisdiction over this transfer petition and thus, the Petition must be dismissed.

## III. CBC Settlement Has Not Alleged a "Case" or "Controversy"

Article III of the Constitution grants federal courts with the power to decide "Cases" or "Controversies." U.S. Const. Art. III, § 2. The Supreme Court has stated that this requires a case to "embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020). The doctrine of standing requires a litigant to prove they have "suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Id.* Thus, to establish standing to sue, "plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a likelihood that the injury 'will be redressed by a favorable decision.'" *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 432 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017). It is irrelevant to the Article III analysis that a state law authorizes a plaintiff to bring a suit in state court. *Id.*, 115 F. Supp. 3d at 434.

Here, CBC Settlement has not suffered an invasion of a legally protected interest. Rather, it is merely seeking an advisory opinion that its proposed transaction with Ms. Lowery is in her best interest. Given the lack of a concrete injury to be redressed by this Court, there is no jurisdiction and the Petition is properly dismissed.

## IV. The Petition Fails to State A Claim Upon Which Relief Can Be Granted Because The Proposed Transfer Would Violate the Anti-Assignment Language in the Settlement Agreement and Related Contracts in Contravention of Well-Established New York Law

### A. Contractual Anti-Assignment Clauses Are Enforceable Under New York Law

The New York Supreme Court has consistently held that:

The Structured Settlement Protection Act expressly allows for an anti-assignment provision in a structured settlement agreement. *In re 321 Henderson Receivables Origination, LLC*, l9 Misc. 3d 504 (Sup Ct 2008). It is well settled that anti-assignment provisions are enforceable. *In re Advance Funding LLC*, 5l Misc. 3d 1215(A) (Sup Ct, Broome Cty, 20l8); *see also, J.G. Wentworth Originations LLC v. Hall*, 42 Misc. 3d 837 (Sup Ct, Yates Cty, 2014).

*CAT IV, LLC, v. Everlake Settlement Corp.*, Index No. 2023-2197 (N.Y. Sup. Ct., Schenectady Cty. April 23, 2024); *CBC Settlement Funding, LLC v. Athene London Assignment Co.,* Index No. 2023-1409 (N.Y. Sup. Ct., Schenectady Cty. Nov. 6, 2023).

It is well-established that the New York Act does not abrogate contract law or contractual anti-assignment provisions. *See Peachtree Settlement Funding, LLC v. Hernandez*, No. 2602122012, 2012 WL 10028450, at *1 (N.Y. Sup. Ct. June 19, 2012); *Matter of the Petition of J.G. Wentworth Originations, LLC (Radcliffe)*, Index No. 30364/10 (Sup. Ct., Westchester Co., March 23, 2011) ("There is absolutely no indication in the legislative history of the [New York Act] that the legislature intended to change the law and to permit the transfer or assignment of the right to payment if the statutory criteria of [the New York Act] were met, notwithstanding restrictive language in a structured settlement agreement"); *In re Lobello*, 28 Misc. 3d 1203(A), at *1, 957 N.Y.S.2d 636 (N.Y. Sup. Ct. 2010) (holding that anti-assignment language is enforceable and that "[t]he passage of the [New York Act] … in 2002 did not alter this general law with regard to the enforceability of such restrictions on sale or transfer"); *Matter of 321 Henderson Receivables Origination LLC (Logan),* 19 Misc. 3d 504, 506, 856 N.Y.S.2d 817 (N.Y. Sup. Ct. 2008) (holding that the enactment of the New York Act did not change the law so as to allow transfers in contravention of a settlement agreement's restrictive language); *In re Emerald Funding Corp. (Brown)*, Index No. 2003/3376 (N.Y. Sup. Ct., Monroe Cty. June 4, 2003), Mem. Decision at 7

("If prior to the [New York Act] a clause such as the one at issue here barred assignment … it should operate just as effectively afterwards.").[3]

Instructive is *In re Foreman*, in which the Illinois Appellate Court, in dismissing a transfer petition, explained that there was nothing in the Illinois SSPA indicating the legislature intended to invalidate contractual provisions against assignment. 36 Ill. App. 3d at 614, 850 N.E.2d at 392. The Illinois Appellate Court further stated that the Illinois SSPA "does not guarantee a payee any right to transfer payments merely because the trial court finds that the elements of the Act have been satisfied." *Id*. Rather, because the parties agreed that the periodic payments could not be assigned, the *Foreman* court found that the transfer petition must be denied. *Id.*

Like the Illinois SSPA construed in *Foreman*, the New York Act requires factoring companies, such as CBC Settlement, to satisfy stringent requirements and seek approval from an appropriate state court before any transfer of structured settlement payment rights may be effectuated. It also conditions approval of a transfer on a finding that the transfer "does not

---

[3] Despite enactment of SSPAs throughout all 50 states, and the District of Columbia, courts consistently find that clear and unambiguous anti-assignment language in settlement agreements and related contracts are enforceable and preclude assignments. *See Johnson v. J.G. Wentworth Originations, LLC*, 284 Or. App. 47, 391 P.3d 865 (2017) (Under California law, obligor under structured settlement agreement was entitled to enforce agreement's anti-assignment clause to prevent beneficiary from transferring his interest in future payments under the agreement to factoring company. Because obligor did not waive the anti-assignment language, approval of the transfer was precluded.); *In re Hughes*, 513 S.W.3d 28 (Tex. App. 2016) (holding that clear and unambiguous anti-assignment language of the settlement agreement, qualified assignment, and annuity are enforceable and trial court erred in granting transfer); *In re Foreman*, 365 Ill. App.3d 608, 615-16, 850 N.E.2d 387, 393 (2006) (dismissing petition for transfer of structured settlement payments, holding that because the structured settlement agreement contained an enforceable anti-assignment provision, the trial court did not have the authority under the Illinois SSPA to approve petition and further holding that "[a]bsent a violation of public policy, we will not approve the voiding of unambiguous, bargained-for contract terms"); *see also Rapid Settlements, Ltd. v. Dickerson*, 941 So. 2d 1275 (Fla. Dist. Ct. App. 2006) (denying transfer petition because it would contravene the terms of the settlement and Florida's structured settlement protection act expressly permits the trial court to deny a proposed transfer); *In re Transfer of Structured Settlement Rts. by Pikula*, No. C3-05-1487, 2005 WL 3963777 (Minn. Dist. Ct. Nov. 3, 2005) (denying transfer petition and concluding that anti-assignment clauses are enforceable under Minnesota law and that proposed transfer would contravene existing law).

contravene any applicable statute or the order of any court or other government authority." GOL § 5-1706(d); *see also* GOL § 5-1708(e) ("Nothing contained in this title shall be construed to authorize any transfer of structured settlement payment rights in contravention of any statute…"). Indeed, the New York Act expressly preserves the rights of structured settlement obligors and annuity issuers, who are defined under the New York Act as "interested parties" entitled to notice, to enforce contractual anti-assignment provisions and to preclude transfers. GOL § 5-1701(f).

Any finding to the contrary would violate the well-established tenet that "common law is never abrogated by implication, but on the contrary, it must be held no further changed than the clear import of the language used in a statute absolutely requires." N.Y. Statutes Law § 301b; *see also Cline v. Avery Abrasives, Inc.*, 96 Misc. 2d 258, 266, 409 N.Y.S.2d 91, 97 (Sup. Ct. 1978) ("the general rule in New York is that the common law is not changed by implication simply because a statute has been enacted in a particular area of the law"); *Oden v. Chemung Cnty. Indus. Dev. Agency*, 87 N.Y.2d 81, 86, 661 N.E.2d 142 (1995) (quoting N.Y. Statutes Law § 301b in holding that "a statute enacted in derogation of the common law … is to be construed in the narrowest sense that its words and underlying purposes permit, since the 'rules of the common law must be held no further abrogated than the clear import of the language used in the statute absolutely requires'").

Accordingly, assuming *arguendo* this Court has subject matter jurisdiction, which it does not, approving the transfer of Ms. Lowery's structured settlement payment rights to CBC Settlement in violation of New York contract principles enforcing anti-assignment language would violate the New York Act.

### B.    The Proposed Transfer Violates the Anti-Assignment Language in the Settlement Agreement and Related Contracts

Under New York law, it is well settled that parties are free to enter into contracts, and that courts should strive to give effect to the terms to which the parties have agreed in a contract. *See,*

*e.g.*, *Slamow v. Delcol*, 174 A.D.2d 725, 726, 571 N.Y.S.2d 335 (App. Div. 1991). "A court may not rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction, nor may it construe the language in such a way as would distort the contract's apparent meaning." *Id.* at 727. Construction of the unambiguous language of a contract is a question of law. *Tigue v. Commercial Life Ins. Co.,* 219 A.D.2d 820, 821, 631 N.Y.S.2d 974 (App. Div. 1995).

New York courts consistently uphold and enforce unambiguous contractual provisions contained in structured settlement agreements and related contracts. *See In re Advance Funding LLC*, 51 Misc. 3d 1215(A), at *6, 38 N.Y.S.3d 830 (N.Y. Sup. Ct. 2016) ("Since Hartford has appeared and asserted its rights under the non-assignment clause in the Settlement Agreement, the non-assignment provision precludes this transfer."); *In re J.G. Wentworth Originations, LLC,* 51 Misc.3d 1216(A), 38 N.Y.S.3d 831 (N.Y. Sup. Ct. 2016) (same); *J.G. Wentworth Originations, LLC v. Robinson*, No. 112976/14 (N.Y. Sup. Ct., Albany Cty. March 27, 2014) ("Because the settlement contains a valid restriction on assignment of its payments, which has not been waived, the transfer proposed herein is prohibited"); *Peachtree Settlement Financing, LLC v. Loftin*, No. 1089321-12 (N.Y. Sup. Ct., Albany Cty. Nov. 13, 2012) ("Because the Structured Settlement Agreement's anti-assignment provision was not properly waived, the petition is denied"); *see also Singer Asset Fin. Co., L.L.C. v. Bachus*, 294 A.D.2d 818, 820, 741 N.Y.S.2d 618 (App. Div. 2002) (where the structured settlement payee surrendered the power to assign his rights under the structured settlement agreement, any attempted assignment of his rights under the agreement was barred); *C.U. Annuity Service Corp. v. Young*, 281 A.D.2d 292, 292-93, 722 N.Y.S.2d 236 (App. Div. 2001) (because the settlement agreement stated that the structured settlement payee was powerless to make an assignment, there was no legal basis upon which the structured settlement

payee or any assignee could assert that a purported sale of structured settlement payments could have legal effect).[4]

Not only do established principles of contract construction dictate that anti-acceleration clauses in structured settlement agreements be enforced, but the policy considerations underlying such clauses call for their enforcement. If a structured settlement complies with Section 130 of the Internal Revenue Code, the payment received by the annuity issuer in return for making periodic payments to the payee is not fully taxable in the year in which it is received. *See First Providian, LLC v. Evans*, 852 So. 2d 908, 909 (Fla. Dist. Ct. App. 2003). One of the conditions of this favorable tax treatment is that the periodic payments may not be assigned or accelerated. Thus, the inclusion of anti-acceleration and anti-assignment clauses in structured settlement agreements and related contracts is intended to ensure that the annuity issuer receives favorable tax treatment under Section 130 of the Internal Revenue Code. *Id.*

Here, the anti-assignment language in the Settlement Agreement clearly and unequivocally states that Ms. Lowery does not have the "power to sell or mortgage or encumber" the Periodic Payments" and that any attempt to do so "shall be null and void." *See* Ex. B at ¶ C. Likewise, the Qualified Assignment expressly provides that "[n]one of the Periodic Payments may be … sold [or] assigned." *See* Ex. C at ¶ 3.[5] Finally, the Annuity clearly provides the "[p]yments may not be

---

[4] Indeed, New York courts have a long history of enforcing contractual restrictions on assignment. *See University Mews Assocs. v. Jeanmarie*, 122 Misc. 2d 434, 439, 471 N.Y.S. 2d 457 (N.Y. Sup. Ct., N.Y. Cty. 1983) (New York courts generally recognize and enforce contractual provisions prohibiting assignment); *Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 103 N.E.2d 891 (1952) (holding that a restriction eliminating the power to assign is enforceable).

[5] CBC Settlement states in its Petition that New York "Insurance Law §3212(d) provides that any purported limitation upon transfer in an annuity contract funding a structured settlement are ineffective if the transfer has been approved pursuant to" the New York Act. *See* Petition ¶ 11. This statement is, at best, a misinterpretation of the statute and, at worst, a deliberate misrepresentation of the provision. Contrary to CBC Settlement' statement, Section 3212(d) merely provides that "[t]he benefits, rights, privileges or options accruing under an annuity

15

anticipated [or] assigned." *See* Ex. D at p. 4. Like the anti-assignment provision in *Young*, the anti-assignment clauses here are unambiguous and explicit in their repudiation of assignment: Ms. Lowery does not have the power or the right to assign the structured settlement payments and any such attempt is null and void. The anti-assignment language in the Settlement Agreement, Qualified Assignment and Annuity makes clear that the transaction upon which CBC Settlement bases its petition is prohibited as a matter of law because it violates the language of these contracts. Thus, to approve the instant transaction would be to sanction, in advance, a direct breach of the governing contracts. The New York Act does not permit such a result.[6]

Because the Settlement Agreement deprives Ms. Lowery of the power to assign the structured settlement payments, New York law precludes the purported transfer. As the party obligated to make the Periodic Payments to Ms. Lowery, Everlake Assignment has the right to enforce this language and to prevent the effectuation of the proposed transfer. *See, e.g.*, *Fox-Greenwald Sheet Metal Co. v. Markowitz Bros.*, 452 F.2d 1346, 1351-52 (D.C. Cir. 1971) (stating

---

contract funding a structured settlement *which would otherwise be nontransferable under this subsection* may be transferred in accordance with [the New York Act]." *Id.* (emphasis added). In other words, this section merely provides that the broad statutory prohibition against the transfer of annuity payments does not apply when the annuity funds a structured settlement and the transfer is approved pursuant to the New York Act. This section does not in any way abrogate the New York Act's requirements for approval of factoring transactions and certainly does not abrogate New York's common law enforcement of clear, unambiguous anti-assignment clauses contained in settlement agreements and related contracts like the anti-assignment language at issue here. *See Logan*, 19 Misc.3d at 506 (Section 3212 does not preclude a payee from agreeing to an anti-assignment provision, and the statute itself expressly allows for an anti-assignment provision in a structured settlement agreement).

[6] While CBC Settlement may attempt to argue that the New York Act "change[d] the context in which such provisions should be considered" and if a payee shows a true hardship, structured settlement obligors and annuity issuers must "advance [a] material unprotected interest in preventing the transfer." *In re Settlement Capital Corp. for Approval of Transfer of Structured Settlement Payment Rights of Maria S. Illescas in Accordance with General. Obligations Law*, No. 103992/03, 2003 WL 26094929 (N.Y. Sup. Ct. Dec. 22, 2003). However, as the cases cited herein show, no New York Court has adopted such a standard. Moreover, there is no language in the New York Act which permits a court to override an objection based upon the anti-assignment language in the underlying contracts.

that "[o]rdinarily a contractual prohibition of assignment is for the benefit of the obligor . . .").
Hence, the anti-assignment provisions in the underlying contracts, which prohibit the assignment,
are valid under New York law and must be enforced by this Court should it determine it has subject
matter jurisdiction over the Petition. Consequently, this Court should dismiss the Petition with
prejudice.

## Conclusion

For the foregoing reasons, the Petition should be dismissed with prejudice.

Dated: October 21, 2024

Respectfully Submitted,

COZEN O'CONNOR

/s/ *Ilya Schwartzburg*
Ilya Schwartzburg
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
ischwartzburg@cozen.com

*Attorneys for Everlake Assignment Company f/k/a
Allstate Assignment Company and Wilton Reassurance
Life Company of New York f/k/a Allstate Life Insurance
Company of New York*

17

**Certification**

I certify that this brief contains 4,990 words and complies with the formatting rules in the

Court's Individual Practice Rules.


<u>*/s/ Ilya Schwartzburg*</u>
Ilya Schwartzburg