EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

CBC SETTLEMENT FUNDING, LLC,

                          Plaintiff(s),

      -against-

EVERLAKE ASSIGNMENT COMPANY f/k/a
ALLSTATE ASSIGNMENT COMPANY, WILTON
REASSURANCE LIFE COMPANY OF NEW YORK
f/k/a ALLSTATE LIFE INSURANCE COMPANY
OF NEW YORK, and DEMIRAR LOWERY,

                         Defendant(s).

-------------------------------------------------------------------X

Case No. __24__ Civ. __4668__ (    )

**VERIFIED PETITION**

**(Pursuant to 26 U.S.C.A. §5891 /
I.R.C. §5891 and N.Y. Gen. Oblig.
Law §5-1701 *et seq.*)**

### TO THE HONORABLE JUDGE OF THE COURT:

       The Petitioner, CBC Settlement Funding, LLC, by its attorneys of record, Sacco & Fillas,
LLP, on notice to interested parties and Respondents, Demirar Lowery, Everlake Assignment
Company f/k/a Allstate Assignment Company, and Wilton Reassurance Life Company of New
York f/k/a Allstate Life Insurance Company of New York, respectfully alleges, as follows:

### NATURE OF APPLICATION

      1.     This is a special proceeding brought, pursuant to 26 U.S.C.A. §5891 / I.R.C.
§5891 (the "*Federal Statute*") and New York's The Structured Settlement Protection Act, Gen.
Oblig. Law §5-1701 *et seq.* (the "*NY Act*" and/or the "*SSPA*") (the "Federal Statute" and the
"NY Act" / "SSPA" collectively referred to as the "*Applicable Acts*"), seeking approval of the
sale and transfer of certain structured settlement payment rights due under a structured settlement
agreement, in accordance with the Applicable Acts.

### INTERESTED PARTIES

      2.     Certain entities are deemed to be "interested parties" to this Petition as defined in
Gen. Oblig. Law §5-1701(f); pursuant to Gen. Oblig. Law §5-1705(c), the "interested parties"
are to be served at least twenty (20) days, or such other period of time as prescribed by the Court,
prior to a Petition being heard with copies of said Petition and Order to Show Cause.

3. The "interested parties" noticed of this Application are:

    a. CBC Settlement Funding, LLC, the Petitioner and Applicant herein, which is a limited liability company formed under the laws of the State of Delaware, maintains its principal place of business in the Commonwealth / State of Pennsylvania, and is deemed a "Transferee" as this term is defined in Gen. Oblig. Law §5-1701(t).

    b. Demirar Lowery, who is the Payee and Transferor herein, and is a competent adult individual who is domiciled and resides in the County of Orange, State of New York, and is deemed a "Payee" as said term is defined in Gen. Oblig. Law §5-1701(h) (hereinafter, "Transferor" and/or "Payee"). The Payee consents to and joins in this application, as evidenced by the transfer agreement and other papers (i.e., the "Purchase and Sale Agreement") consummated by and between said Payee and CBC Settlement Funding, LLC;

    c. Everlake Assignment Company f/k/a Allstate Assignment Company ("EVERLAKE"), which, upon information and belief, is a foreign insurance company authorized to do business in the State of New York, and is deemed a "Structured Settlement Obligor", as said term is defined in Gen. Oblig. Law §5-1701(n), in connection with the structured settlement payment rights at issue in this proceeding; and

    d. Wilton Reassurance Life Company of New York f/k/a Allstate Life Insurance Company of New York ("WILTON"), which, upon information and belief, is a foreign insurance company authorized to do business in the State of New York, and is deemed an "Annuity Issuer", as said term is defined in Gen. Oblig. Law §5-1701(a), in connection with the structured settlement payment rights at issue in this proceeding.

## VENUE AND JURISDICTION

4.      Jurisdiction exists in the United States District Court for the Southern District of New York because this is the "court which approved the structured settlement agreement" in an action styled as "*Velda Lowery, et al v. Ossining Union Free School District, et al*", Civil Case No. 02 Civ. 8350 (JSR). See Gen. Oblig. Law §5-1705(b)(ii). See also 26 U.S.C.A. §5891 / I.R.C. §5891. Annexed hereto as Exhibit "A" and incorporated herein by reference is a true and correct copy of the Infant's Compromise Order, promulgated under Civil Case No. 02 Civ. 8350.

5.      Jurisdiction also exists in this Court under 26 U.S.C. §1332(a)(1) because:

   a.  The amount in controversy and/or at issue in this matter exceeds the sum or value of $75,000.00.

   b.  Petitioner is a citizen of, and maintains its principle offices in, a state (Pennsylvania) different from that of at least one Respondent.

   c.  Upon information and belief, Respondent, Demirar Lowery, is a citizen of, and resides in, the State of New York.

   d.  Upon information and belief, Respondents, EVERLAKE and WILTON, are citizens of, and maintain their principle offices in, the State of Illinois.

## STATEMENT OF FACTS

6.      Upon information and belief, the Payee is not married, has two (2) minor children, and has no other dependents or beneficiaries under the structured settlement payment rights which are the subject of this proceeding. Annexed hereto as Exhibit "B" is a true and correct copy of the Payee's List of Dependents.

7.      Upon information and belief, as a result of a settlement of a tort / personal injury claim, the Transferor became a beneficiary of certain structured settlement payments, which provided for a series of deferred cash payments under a "structured settlement" as defined in Gen. Oblig. Law §5-1701(l) and 26 U.S.C. §5891(c)(1).

3

8.    Upon information and belief, the structured settlement was the subject of a "qualified assignment", pursuant to Internal Revenue Code §§104 and 130, 26 U.S.C. §§104 and 130, as a result of which EVERLAKE assumed the liabilities of the structured settlement obligor to make the payments provided for under the structured settlement.

9.    Upon information and belief, the Structured Settlement Obligor funded its obligation to make the structured settlement payments through the purchase of a certain annuity contract/policy (the "Annuity") from Annuity Issuer, WILTON, whereby the Payee became entitled to receive certain structured settlement payment rights.

10.    Pursuant to 26 U.S.C. §5891(a), any transfer of structured settlement payment rights pursuant to a transfer agreement entered into after July 1, 2002, subjects the transferee (i.e., the purchaser of the structured settlement payment rights) to an excise tax unless the transfer has been approved by, inter alia, a court of the state in which the Payee of the structured settlement is domiciled through the issuance of a "qualified order," which is defined as an order issued pursuant to the terms of a statute regulating the transfer of structured settlement transfer rights enacted by the state in which the Payee(s) is/are domiciled or the settled case was litigated. The SSPA, Gen. Oblig. Law §5-1701 et seq., is such a statute.

11.    New York Insurance Law §3212(d) provides that any purported limitation upon transfer in an annuity contract funding a structured settlement are ineffective if the transfer has been approved pursuant to Gen. Oblig. Law §5-1701 et seq.

12.    The Transferor seeks to sell, assign and transfer to the Petitioner, CBC Settlement Funding, LLC, its successors and/or assigns, certain payments remaining under their structured settlement agreement pursuant to the terms of a "transfer agreement" as defined in Gen. Oblig. Law §5-1701(r). A true and correct copy of the Purchase and Sale Agreement is annexed hereto as Exhibit "C". It is a condition of said Purchase and Sale Agreement that the transfer be approved by a court and under an order that must be recognized and honored by EVERLAKE, as the structured settlement obligor, and WILTON, as the annuity issuer.

13. The proposed transfer seeks approval, as authorized by the Applicable Acts, for the sale and transfer of the following structured settlement payment rights (periodic payments): one hundred twenty (120) monthly payments of $2,200.00, beginning with the payment due and payable on or about August 1, 2039, continuing through to and including the payment due and payable on or about July 1, 2049. See Exhibit "C" and Exhibit "D".

14. All disclosure requirements of Gen. Oblig. Law §5-1703 have been complied with by providing, not less than ten (10) days prior to the date on which Payee executed the transfer agreement by regular mail and certified-mail return-receipt requested and/or postal office priority mail as the case may be, the disclosure statement in fourteen (14) point bold type containing disclosures in plain language the information required therein, namely:

a. the amounts and due dates of the structured settlement payments to be transferred;

b. the aggregate amount of such payments;

c. the discounted present value of the payments to be transferred which shall be identified as the "calculation of current value of the transferred structured settlement payments under federal standards for valuing annuities", and the amount of the applicable federal rate used in calculating such discounted present value;

d. the price quote from the original annuity issuer or, if such price quote is not readily available from the original annuity issuer, then a price quote from two (2) other annuity issuers that reflects the current cost of purchasing a comparable annuity for the aggregate amount of payments to be transferred; the gross advance amount and the annual discount rate, compounded monthly, used to determine such figures;

e. an itemized listing of all commissions, fees, costs, expenses and charges payable by the Payee or deductible from the gross amount otherwise payable to the Payee and the total amount of such fees;

f. the net advance amount including the statement: "The net cash payment you receive in this transaction from the buyer was determined by applying the specified discount rate to the amount of future payments received by the buyer, less the total amount of commissions, fees, costs, expenses and charges

5

payable by you";

g. the amount of any penalties or liquidated damages payable by the Payee in the event of any breach of the transfer agreement by the Payee; and

h. a statement that the Payee has the right to cancel the transfer agreement, without penalty or further obligation, not later than the third business day after the date the agreement is signed by Payee.

Annexed hereto as Exhibit "D" is a true and correct copy of said disclosure statement(s) and proof of notice of said statement(s).

15.     The aggregate total of the Transferred Payments is $264,000.00 (Exhibit "D").

16.     The discounted present value of the Transferred Payment(s), applying the then applicable and available published federal rate of 5.4% is $92,507.74 (Exhibit "D").

17.     The gross / net amount payable to the Payee is $25,000.00 (Exhibit "D").

18.     The annual discount rate, compounded monthly, used to determine the gross advance amount is 12.73% (Exhibit "D"), which rate, under New York law, cannot be deemed as high, and unfair and unreasonable. In re Cherlee Medina, 12/26/2008 N.Y.L.J. 27 (col. 1) (Sup. Ct., Bronx Co.) (13.92% discount rate is fair and reasonable); In re Kimberly Whispell (unpublished decision) (Sup. Ct., Ulster Co., Index No. 08-4095) (15.66% discount rate is fair and reasonable); and In re Settlement Funding of New York, LLC (John E. Platt), 774 N.Y.S.2d 635 (Sup. Ct., Lewis Co. 2003) (approving transfer with 19.99% discount rate).

19.     The Court, in In re Settlement Funding of New York, LLC (John E. Platt), 774 N.Y.S.2d 635, approved a guaranteed structured settlement transfer with a discount rate of 19.99% funding it to be fair and reasonable; in approving this transfer, the court noted that "no universal percent prohibition on discount rate can be adopted as a judicial standard that would preclude approving assignment of payments due under structured settlement in exchange for a discounted lump sum under the Structured Settlement Protection Act give the need for flexibility and the delegation of discretion to courts." Id.

6

20. Noteworthy, the Court, in In Re Henderson Receivables, L.P., 819 N.Y.S.2d 826 (Sup. Ct. 2006), opined that (i) the analyses for determining what is fair and reasonable under the Structured Settlement Protection Act must be based upon what is reasonable within the range of the marketplace coupled with the best interest analysis; and (ii) the more pressing the need, the more reasonable it may be for a payee to obtain immediate cash at a steep discount rate. Citing In Re 321 Henderson Receivables Ltd. Partnership, 769 N.Y.S.2d 859 (Sup. Ct. 2003).

21. The transfer complies with all requirements and standards of the Applicable Acts; in that:

    a. For the reasons shown in the Payee's Affidavit, along with the documentary evidence is support thereof (if any), see Exhibit "E", the transfer is in the best interests of said Payee;

    In particular, the Payee intends to use the proceeds from this transaction to secure housing. See Payee Affidavit, at ¶8 (Exhibit "E"); and

    b. The transfer does not contravene any Federal or State statute or the order of any court or responsible administrative authority.

22. The transfer complies with all requirements and standards of Gen. Oblig. Law §5-1701 et seq., in that:

    a. It complies with all requirements of the Structured Settlement Protection Act, Gen. Oblig. Law §5-1701 et seq.;

    b. For the reasons shown in the Payee's Affidavit, along with the documentary evidence is support thereof (if any), see Exhibit "E", the transfer is in the best interest of the Payee taking into account the welfare and support of the Payee's dependents, if applicable, and the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, is fair and reasonable;

    c.   The Payee has been advised in writing by the Transferee to seek independent professional advice regarding the transfer and has either received such advice or knowingly waived such advice in writing (the affidavit of the Payee acknowledging receipt of such advice and that s/he has either received or waived such advice is annexed hereto as Exhibit "F").

    d.   The transfer does not contravene any applicable statute or the order of any court or administrative or government authority, and both the transfer agreement and all disclosures are written in plain language and in compliance with Gen. Oblig. Law §5-702.

23.    It is submitted that Gen. Oblig. Law §5-1705(c) explicitly authorizes and directs the filing of this matter by Order to Show Cause and Petition.

24.    No prior application for the relief herein prayed for has been made, except as stated in Payee's Affidavit. See Payee Affidavit, at ¶9 (Exhibit "E").

WHEREFORE, pursuant to Gen. Oblig. Law §5-1701 et seq., the Petitioner hereby respectfully requests that this Court enter an Order, in a form to be submitted herewith, approving the sale and transfer herein, based upon findings that: (i) the transfer is in compliance with the requirements of 26 U.S.C.A. §5891 and I.R.C. §5891; and Gen. Oblig. Law §5-1701 et seq.; (ii) the transfer is in the best interest of the Payee, taking into account the welfare and support of Payee's dependents (if applicable) and the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, is fair and reasonable; (iii) the Payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received such advice or knowingly waived such advice in writing; (iv) the transfer does not contravene any applicable federal or state statute or order of any court or other administrative or government authority; and (v) the transfer agreement, disclosure and related documents are written in plain language and in compliance with Gen. Oblig. Law §5-702 and directing EVERLAKE, as the structured settlement obligor, and WILTON, as the annuity issuer, to recognize and honor the terms of the transfer agreement to the Petitioner, CBC Settlement Funding, LLC, its successors and/or assigns, and to make payment of the structured settlement payments that are the subject of

this proceeding to the Petitioner, CBC Settlement Funding, LLC, its successors and/or assigns.

Dated: Astoria, New York
June 19, 2024

Respectfully submitted,

SACCO & FILLAS, LLP


/s/ Luigi Brandimarte
By: Luigi Brandimarte, Esq. (LB-8388)
Attorney(s) for Plaintiff(s)
31-19 Newtown Avenue
Seventh Floor
Astoria, New York 11102
(718) 269-2201 – Telephone
(718) 732-2409 – Facsimile
Our File No.: 32718-24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CBC SETTLEMENT FUNDING, LLC,

                         Plaintiff(s),

           -against-                              **ATTORNEY'S VERIFICATION**

EVERLAKE ASSIGNMENT COMPANY f/k/a
ALLSTATE ASSIGNMENT COMPANY, WILTON
REASSURANCE LIFE COMPANY OF NEW YORK
f/k/a ALLSTATE LIFE INSURANCE COMPANY
OF NEW YORK, and DEMIRAR LOWERY,

                         Defendant(s).
-------------------------------------------------------------------X

       LUIGI BRANDIMARTE, an attorney duly admitted to practice in the Courts of the State of New York, affirms the following, upon information and belief, under the penalties of perjury:

       I am the attorney of record for the Petitioner, CBC Settlement Funding, LLC, in the above-entitled action.

       I have read the foregoing Order to Show Cause and Verified Petition and know the contents thereof; the same is true to my own knowledge except as to the matters therein stated to be alleged on information and belief, and that as to those matters, I believe them to be true.

       This verification is made by your affirmant and not by Petitioner because said Petitioner does not maintain its principal place of business within the County of Queens, which is the County where your affirmant maintains offices.

       The grounds of your affirmant's belief as to all matters not stated upon affirmant's knowledge are correspondence had with Petitioner, information contained in said Petitioner's file, which is in your affirmant's possession, and other pertinent data relating thereto.

Dated: Astoria, New York
      June 19, 2024

                               /s/ Luigi Brandimarte
                               Luigi Brandimarte, Esq.

UNITED STATES DISTRICT COURT   Case No. _____ Civ. _____ (_____)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - - - - - - - - - - - - X
CBC SETTLEMENT FUNDING, LLC,
        Plaintiff(s),

   -against-

EVERLAKE ASSIGNMENT COMPANY f/k/a
ALLSTATE ASSIGNMENT COMPANY, WILTON
REASSURANCE LIFE COMPANY OF NEW YORK
f/k/a ALLSTATE LIFE INSURANCE COMPANY
OF NEW YORK, and DEMIRAR LOWERY,
        Defendant(s).
- - - - - - - - - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - - - - - - - - - - - X

## ORDER TO SHOW CAUSE,
## VERIFIED PETITION AND EXHIBITS

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney duly admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.


Dated: June 19, 2024    Signature:  /s/ Luigi Brandimarte
                Luigi Brandimarte, Esq.


SACCO & FILLAS, LLP
Attorney(s) for Plaintiff (s)
31-19 Newtown Avenue
Seventh Floor
Astoria, New York 11102
(718) 269-2201 – Telephone
(718) 732-2409 – Facsimile

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CBC SETTLEMENT FUNDING, LLC,                     Case No. ___24___ Civ. _4668_ ( )
                                    Plaintiff(s),
                    -against-

EVERLAKE ASSIGNMENT COMPANY f/k/a                **ORDER TO SHOW CAUSE**
ALLSTATE ASSIGNMENT COMPANY, WILTON
REASSURANCE LIFE COMPANY OF NEW YORK
f/k/a ALLSTATE LIFE INSURANCE COMPANY
OF NEW YORK, and DEMIRAR LOWERY,
                                    Defendant(s).
------------------------------------------------------------------------X

Upon reading and filing the annexed Petition of CBC Settlement Funding, LLC, dated and verified on June 19, 2024, and the exhibits annexed thereto, and upon all the pleadings and proceedings heretofore had herein, and sufficient cause having been shown therein,

**LET** the Respondents show cause before a motion term of this Court, at Room _____, United States Courthouse, 500 Pearl Street, in the City, County and State of New York, on the _____ day of _____, 2024, at _____ o'clock in the _____ noon of that day, or as soon thereafter as counsel may be heard,

**WHY** an Order should not be made and entered herein, pursuant to 26 U.S.C.A. §5891 and I.R.C. §5891 (the "*Federal Statute*") and New York's The Structured Settlement Protection Act, Gen. Oblig. Law §5-1701 *et seq*. (the "*NY Act*") (the "Federal Statute" and the "NY Act" collectively referred to as the "*Applicable Acts*"), as follows:

A.      Declaring that the sale and transfer of structured settlement payment rights, pursuant to a Purchase and Sale Agreement (the "Purchase Agreement") by and between Demirar Lowery, as the Payee, and CBC Settlement Funding, LLC, as the Transferee, complies with all requirements of the Applicable Acts;

B.      Declaring that the sale and transfer of structured settlement payment rights is in the best interest of the Payee, Demirar Lowery, taking into account the welfare and support of the Payee's dependents (if applicable), and that the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, are fair and

reasonable;

C.   Declaring that the Payee, Demirar Lowery, have been advised in writing of the right to seek independent professional advice regarding the transfer of structured settlement payment rights and has either received such advice or knowingly waived such advice and opportunity in writing;

D.   Declaring that the sale and transfer of structured settlement payment rights does not contravene any federal or state statute or order of any court, governmental authority or other responsible administrative authority;

E.   Declaring that the Purchase Agreement and all disclosure and related documents are written in plain language and in compliance with Gen. Oblig. Law §5-702;

F.   Authorizing and approving the sale and transfer of structured settlement payment rights by and between Demirar Lowery, as the Payee, and CBC Settlement Funding, LLC, as the Transferee, pursuant to the Purchase Agreement;

G.   Directing Everlake Assignment Company f/k/a Allstate Assignment Company, as the Structured Settlement Obligor, and Wilton Reassurance Life Company of New York f/k/a Allstate Life Insurance Company of New York, as the Annuity Issuer, to recognize and honor the terms of the Purchase Agreement and the assignment by the Payee, to the Transferee, CBC Settlement Funding, LLC, its successors and/or assigns;

H.   Directing Everlake Assignment Company f/k/a Allstate Assignment Company, as the Structured Settlement Obligor, and Wilton Reassurance Life Company of New York f/k/a Allstate Life Insurance Company of New York, as the Annuity Issuer, to make payments in accordance with a certain annuity contract/policy, as follows: one hundred twenty (120) monthly payments of $2,200.00, beginning with the payment due and payable on or about August 1, 2039, continuing through to and including the payment due and payable on or about July 1, 2049; and

2

I.      Granting such other and further relief as the Court deems just, proper and equitable.

SUFFICIENT REASON APPEARING THEREFOR, let service of a copy of this Order, via overnight delivery, together with a copy of the papers upon which said Order was granted, upon the Respondents (i) Demirar Lowery; (ii) Everlake Assignment Company f/k/a Allstate Assignment Company; and (iii) Wilton Reassurance Life Company of New York f/k/a Allstate Life Insurance Company of New York, on or before the _____ day of _____, 2024 **(which date shall be at least twenty (20) days before the time at which application is noticed to be heard)**, be deemed good and sufficient service.

DATED:      New York, New York

ISSUED:

_____
United States District Judge

# *EXHIBIT "A"*

PAGE 2/7 ' RCVD AT 12/4/2003 10:38:24 AM [Central Standard Time] ' SVR:2 ' DNIS:4221 ' CSID:732 249 8679 ' DURATION (mm-ss):02-52

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

VELDA LOWERY, individually, and as Legal Guardian
for "JANE DOE," an infant,

                    Plaintiffs,

      -against-

OSSINING UNION FREE SCHOOL DISTRICT,
ROBERT J. ROELLE, individually and as
Superintendent of Ossining Union Free School
District, JOSHUA MANDEL, individually and as
Principal of Ossining High School,

                    Defendants.

---------------------------------------------------------X

**INFANT'S
COMPROMISE ORDER**

02 CIV 8350 (JSR)

Upon reading and filing the Affirmation of Keith S. Harriton, Esq., sworn to on the 18th day
of November, 2003, the attorney for the Plaintiffs and the Exhibits attached to said Affirmation, and
it appearing that the best interests of the infant Plaintiff will be served by said settlement, it is

    ORDERED, that the above-captioned matter is settled for the sum of Five Hundred Fifty
Thousand ($550,000.00) Dollars which represents the total payment by the Defendants of the
settlement as provided for hereinafter, and it is further

    ORDERED, ADJUDGED, and DECREED, that the Defendants and/or the insurance
carrier for the Defendants are authorized and directed to pay to Plaintiffs attorneys, Harriton &
Furrer, LLP, the sum of Two Hundred Twenty One Thousand Two Hundred Eight Nine and 71/100
($221,289.71) Dollars for services rendered and for expenses incurred, and it is further

    ORDERED, ADJUDGED, and DECREED, that the Defendants and/or the insurance
carrier for the Defendants are authorized and directed to pay to Harriton & Furrer, LLP, as
attorneys for and on behalf of Plaintiff Velda Lowery, the sum of Seventy One Thousand
($71,000.00) Dollars, and it is further

                    HARRITON & FURRER, LLP
                   ATTORNEYS AND COUNSELORS AT LAW

Dec. 04 2003 11:35AM P2     PAGE.02    PHONE NO. : 914 252 5590     FROM : HARRITON&FURRER,LLP

12/04/03     12:01     732 249 8679     CREATIVE CAPITAL     002/007

PAGE 3/7  RCVD AT 12/4/2003 10:58:24 AM [Central Standard Time] * SVR:/3 * DNIS:4221 * CSID:732 249 8679 * DURATION (mm-ss):02-52

ORDERED, ADJUDGED, and DECREED, that the Defendants and/or the insurance carrier for the Defendants are authorized and directed to pay to Plaintiff Velda Lowery as guardian of Demirar Lowery the sum of Six Thousand Nine Hundred Fifty Six and 29/100 ($6,956.29) jointly with an officer of the Bank of New York, 21 Spring Street, Ossining, New York 10562 and it is further

ORDERED, ADJUDGED, and DECREED, that the Defendants and/or the insurance carrier for the Defendants shall be required to make the following periodic payments, to the infant Plaintiff, under the terms hereafter set forth.

(A)    Future Periodic Payments to be paid as follows:

beginning 8/1/2004, $20,000.00 annually guaranteed for 4 years only;

beginning 8/1/2008, $300.00 monthly guaranteed for 48 months only;

beginning 8/1/2011, $500.00 monthly guaranteed for 36 months only;

beginning 8/1/2014, $700.00 monthly guaranteed for 60 months only;

beginning 8/1/2019, $900.00 monthly guaranteed for 60 months only;

beginning 8/1/2024, $1,200.00 monthly guaranteed for 60 months only;

beginning 8/1/2029, $1,500.00 monthly guaranteed for 60 months only;

beginning 8/1/2034, $2,500.00 monthly guaranteed for 60 months only;

beginning 8/1/2039, $3,977.09 monthly guaranteed for 120 months only.

(B)    That the beneficiary of said payments is the Estate of Demirar Lowery and that the above aforementioned payments stated as guaranteed shall be paid whether or not the infant is alive. In the event that the infant dies at any time prior to the receipt of all payments described as guaranteed, the balance of any guaranteed payments shall be paid to her Estate or to any such person she may so designate on attaining age of majority, and it is further

ORDERED, ADJUDGED and DECREED, that the obligations of the Defendants and/or

2

HARRITON & FURRER, LLP
ATTORNEYS AND COUNSELORS AT LAW

DEC. 04 2003 11:26AM P3    PAGE 222 SIR : 312 252 5252    FROM : HARRITON FURRER LLP

12/04/03    12:02    732 249 8679    CREATIVE CAPITAL    @003/007

their insurer may be met by assigning to and arranging for an assumption by the Allstate Assignment Company ("Assignee") of the Defendants' and/or the insurer's obligation to make the future periodic payments set forth herein, pursuant to Internal Revenue Code Section 130(c), and that Allstate Assignment Company may fund the obligation assumed by the purchase of an annuity from the Allstate Life Insurance Company of New York, an A.M. Best Company rated A+ insurer licensed to do business in the State of New York. It is understood that Allstate Life Insurance Company shall guarantee the performance of the Allstate Assignment Company, and it is further

ORDERED, ADJUDGED and DECREED that Allstate Assignment Company may fund its obligation to make the periodic payments by purchasing an annuity policy from Allstate Life Insurance Company of New York which shall be owned by Allstate Assignment Company pursuant to Internal Revenue Code Section 130(d), and it is further

ORDERED, ADJUDGED and DECREED that the Defendants and/or their insurer shall immediately forthwith fund the periodic payment obligation by delivering a check or draft in the sum of Two Hundred Fifty Thousand Seven Hundred Fifty Four ($250,754.00) Dollars made payable to Allstate Assignment Company and delivered to Creative Capital Inc., the structured settlement broker placing the case, and it is further

ORDERED, ADJUDGED and DECREED that no part of the sum being paid by the Defendants and/or their insurance carrier to provide future periodic payments as set forth in this Order may be paid directly to Plaintiff, this Court having determined that a structured settlement is in the best interest of the infant Plaintiff and that said periodic payments constitute damages on account of physical injury or physical sickness in a case involving physical injury or physical sickness within the meaning of Section 104(a)(2) and 130(c) of the Internal Revenue Code of 1986, as amended, and it is further

ORDERED, ADJUDGED and DECREED that Velda Lowery, as the aunt and legal

3

HARRITON & FURRER LLP
ATTORNEYS AND COUNSELORS AT LAW

PAGE 5/7, RCVD AT 12/4/2003 10:53:24 AM [Central Standard Time], SVR:3 / DNIS:4221, CSID:732 249 8679, DURATION (mm-ss):02-52

guardian of Demirar Lowery, be, and she hereby is, directed, authorized and empowered to

execute such releases and other ancillary documents reasonably required by Defendants and/or

their insurance carrier to effectuate the settlement, and it is further

   *ORDERED, ADJUDGED and DECREED* that upon making and receipt of all of the

payments above directed in compliance with this order, as well as the assignment to Allstate

Assignment Company, as set forth above, the Defendants and their insurance carrier shall then

be discharged from any and all responsibility as to the causes of action set forth in this action, and

it is further

   *ORDERED, ADJUDGED and DECREED* that the filing of any bond is dispensed with.

Dated: New York, New York
       November 29, 2013

                         SO ORDERED:

                                       _____
                                       HONORABLE JED S. RAKOFF
                                       UNITED STATE DISTRICT COURT JUDGE

                                      4

*EXHIBIT "B"*

DocuSign Envelope ID: FAA085BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

# **List of Dependents**

The following is a list of dependents for:

***"Dependents" include your spouse and minor children and all other family members and other persons for whom you are legally obligated to provide support, including alimony.***

I have dependent(s) as listed below:

| Names | Relationship | DOB | Age |
|---|---|---|---|
| JAHAZIAH FRANCIS | SON | 11/10/10 | 13 |
| NASIAH LOWERY | DAUGHTER | 12/9/18 | 5 |
| | | | |
| | | | |
| | | | |

***Check this box if you have no children/dependent(s):***

Date: 5/21/2024 | 11:59 AM PDT    SIGN HERE

Demirar Lowery

*EXHIBIT "C"*

DocuSign Envelope ID: FAA065BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

# PURCHASE AND SALE AGREEMENT

This contract is for the sale of structured settlement payments payable under annuity policy number _____ **(policy)** issued by Everlake Assignment Company f/k/a Allstate Assignment Company **(issuer)** by and among CBC Settlement Funding, LLC **(we, us, our)** and Demirar Lowery **(you, your, seller)**.

**You** will sell the future annuity payments identified on Exhibit A to **us** for the **purchase price** of $25,000.00, according to this **contract** and the documents listed on the <u>List of Closing Documents</u>.

### Defined Terms

**Business day** means any weekday that banks are open for normal business in New York City.

**CBC Settlement Funding, LLC** means CBC Settlement Funding, LLC a Delaware Limited Liability Company.

**Closing date** means the date on which the **purchase price** is released to the **seller**.

**Contract** or **contract documents** means, this Purchase Agreement and the documents listed on the <u>List of Closing Documents</u>, and any other documents incorporated by reference.

**Contract date** means the date on which the parties execute the signature page of this **contract**.

**Encumbrance** means any claim, right, lien, policy loan, or restriction.

**Issuer** means the life insurance company that issued the **policy**.

**Obligor** means the entity which is listed as the owner of the **policy**.

**Party** means one of **you** or **us**. **Parties** means both **you** and **us**.

**Person** means any natural person or legal entity.

**Policy** means the annuity policy described on this **contract's** first page and on <u>Exhibit C – Policy Description</u>.

**We, us,** or **our** means CBC Settlement Funding, LLC, with its successors, assigns, and designees.

**You** or **your** means the **person** named on this **contract's** first page. Some of the documents listed on the <u>List of Closing Documents</u> refer to **you** as the **seller**.

DocuSign Envelope ID: FAA085BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

I. **Sale of the policy**

    A.    On the **closing date, you** will; (i) Sell, transfer or assign to **us** the **policy** free from any **encumbrance**; and (ii) name **us** the **policy's** sole payee and beneficiary for the duration of the payments listed on <u>Exhibit A</u>.

    B.    In exchange for; (i) selling the payments listed on Exhibit A; (ii) changing the beneficiary to **us**; and (iii) fulfilling **your** promises under this **contract,**

        **we** will pay **you** the **purchase price.**

    C.    **We** are not buying any additional benefits that may be payable under the Policy. Any additional unencumbered payments go to the address designated by **you.**

II. **Purchase price**

    A.    The **net purchase price** is $25,000.00, payable by check or ACH.

    B.    The **purchase price** is fair and reasonable to **you** and **us.**

    C.    **You** understand that the **purchase price** is less than the aggregate payments being sold.

    D.    **You** understand that **we** may have to hold back a portion of the **purchase price** until such time as the **Issuer** provides confirmation that all payment transferred pursuant to this agreement will be sent to **us**. The hold back payments may be used to satisfy any payments received by **you** belonging to **us**. **You** understand that **we** may have to escrow a portion of the **purchase price** until such time as the **Issuer** provides confirmation that all payment transferred pursuant to this agreement will be sent to **us**. The escrowed payments may be used to satisfy any payments received by **you** belonging to **us**. From the closing **date, you** will provide updated contact and banking information for ninety (90) days. Failure to do so will subject escrowed payments to a monthly service fee after ninety (90) days of one-half (1/2) of one (1) percent.

    E.    **We** may adjust the **purchase price** by the following amounts, if any: (i) Fees charged by the annuity Issuer or Obligor (if applicable); (ii) Any costs associated with obtaining court approval; (iii) Any other amounts as directed by **you**; and (iv) Payments **you** owe to **brokers** that helped **you** sell the **policy** (if any). Any adjustments shall be disclosed to **you** in a **disclosure statement** (Schedule 1).

        The adjusted amount is the **net purchase price.**

III. **Closing procedures**

    Before the sale can be completed, the following conditions must be satisfied

    A.    **You** provided **us** signed originals of the **contract documents.**

    B.    **You** provided **us** all documentation about the **policy**.

    C.    **You** are living on the **closing date.**

    D.    To the best of **your** knowledge (i) Every statement made by **you** in this **contract** and the **closing documents** is true and complete on the **closing date**; and (ii) There is no threatened or pending litigation, governmental action or change in law or rule that affects the legality and enforceability of this **contract.**

DocuSign Envelope ID: FAA065BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

IV.     **Your representations** .

Except as disclose by **you** in the **contract documents, you** represent and warrant to **us** that on the **contract date** all of the following:

A.      **You** are the **policy's** sole and undisputed payee.

B.      The payments listed on Exhibit A are free of any **encumbrance**.

C.      There are no restrictions on **your** ability to sell the **policy** to **us**.

D.      No law, divorce decree or other legal proceeding (i) requires **you** to keep the **policy** for the benefit of a current or former spouse, dependent children, or other **person**; or (ii) forbids **you** from contracting with **us**, selling the **policy**, and changing the **policy's** beneficiary.

E.      **You** are competent and have the authority to contract with **us** to sell the payments.

F.      Either **You** have never filed for bankruptcy; or **if you** filed for bankruptcy, the **policy** was not subject to the claims of **your** creditors. **You** gave us a copy of the bankruptcy discharge papers and any bankruptcy papers related to the **policy**.

G.      **You** have fulfilled all child support.

H.      There are no tax liens against **you** or **your** property, including the **policy**.

I.      **You** legally live in, and **your** primary residence is in, the State of NY

J.      Any future owner of the payments will have all of **our** rights and duties **you** owe to **us** under this **contract**. This includes the right to make a claim against **you** for violating any of the representations or promises **you** made in this **contract**.

K.      **You** had sufficient time to consider the sale of the **policy** and this **contract**.

L.      **You** got independent professional advice about the sale of the **policy** and this **contract** or knowingly waived such advice.

M.      **We** did not provide tax, financial, or legal advice about this **contract**.

N.      The **issuer** may require that the entire monthly payment be sent to **us** even if **you** have not sold the entire payment. In such an event, **we** will timely remit any portions due **you** to such address as **you** may designate.

O.      **You** freely and voluntarily agree to this **contract**.

P.      If **you** are married, **your** spouse understands this **contract**.

Q.      **We** may sell, transfer, or assign the **policy** in a sale, securitization, or other financing transaction (**resale**).

R.      **You** recognize that after the cancellation period **we** will expend significant legal fees to obtain court order approval of this transaction. **You** will not enter into any other agreement with any other third party to sell any of the payments outlined in Exhibit A.

DocuSign Envelope ID: FAA065BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

**V.    Your promises to us**

A.    Before and after the **closing date**, **you** will cooperate in completing and signing documents to transfer the **policy's** ownership and change its beneficiary and correct any documentation errors in this **contract**; and

B.    From the **contract date** to the **closing date**, **you** will not; (i) sign any agreement to sell the **policy** to any **person** other than **us**, (ii) change the **policy's** owner or beneficiary to any **person** other than **us**, or (iii) grant any other **encumbrance** against the **policy**.

C.    From the **contract date** to the **closing date**, **you** will give **us** any information necessary to update **your** representations and promises in this **contract**. **You** will provide updated documents and information when they become available.

D.    Restrictions on Assignment:  Your Settlement Agreement and related settlement documents may contain language prohibiting your power to accelerate, defer, increase, decrease or assign your payments.  You hereby waive and release any such restriction if your settlement agreement and/or related settlement documents contain this or similar language.  As such, you understand and agree that you will never claim or assert that the payments you are now selling were not transferrable, or that this language renders this Agreement void and/or voidable.

**VI.    Cancellation by us**

**We** may cancel this **contract** before the **closing date** if:

A.    **You** breach any representation or warranty contained in this **contract**.

B.    **We** are sued or threatened with any litigation or regulatory action regarding about this **contract** or the **policy**.

C.    Any voluntary or involuntary bankruptcy is filed involving **You**.

D.    **You** are no longer living.

E.    A major rating agency downgrades the **issuer** or **obligor's** credit rating.

F.    The **issuer** or **obligor** is insolvent or under regulatory supervision.

G.    **We** are unable to provide the **purchase price** when due.

**VII.    Cancellation by you**

A.    **You** may end this **contract** prior to the tenth (10th) day following your execution of this **contract** and the disclosure statement.  This is the **cancellation period**.

B.    To end this **contract**, **you** must notify **us** in writing before the **cancellation period** ends.

**VIII.    Indemnification**

**You** will pay **us** for losses or actual damages **we** suffer:

A.    If **you** do not comply with **your** responsibilities under this **contract**;

B.    Because any representation or warranty **you** made in this **contract** was false or incomplete;

DocuSign Envelope ID: FAA085BE-9FF4-4673-A21C-371F5E6A19C3

CBC File # 57836

C.    **You** failed to keep any promise **you** made in this **contract**.

IX.    **Notices**

All notices about this **contract** must be in writing.  Notice is deemed delivered when received at the addresses listed below:

If to **you**:
Demirar Lowery
102 North St Apt 6
Middletown, NY 10940

If to **us**:
CBC Settlement Funding, LLC
181 Washington St., Suite 375
Conshohocken, PA  19428

X.    **Miscellaneous**

A.    This **contract** is the entire agreement between **you** and **us**.

B.    Both **parties** must agree in writing to any change to this **contract** or waiver of its terms.

C.    **You** cannot voluntarily or involuntarily sell, assign, or transfer this **contract**, or any of **your** rights or duties under this **contract**.

D.    If there is more than one of **us** or **you**, this **contract** applies to all of those people together, and to each of them on their own.

E.    This Agreement and any disputes between the parties shall be governed, interpreted, construed and enforced in accordance with the internal laws of the state issuing the court order approving the transfer of the structured settlement payments (**"Approval State"**). The Approval State is the proper venue to bring any cause of action.  The parties agree to jurisdiction in any court of competent jurisdiction within the Approval State.

F.    Failure to enforce any provision of this **contract** is not a waiver of that provision.

G.    If a court undoes any part of this **contract**, the rest of the **contract** remains valid.

H.    The parties may sign this **contract** in one or more counterparts.  Each counterpart will be considered an original.

DocuSign Envelope ID: FAA065BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

> **WARNING**
> **Making misleading or false statements or representations is a crime and penalties may include imprisonment, fines, denial of benefits, and civil damages.**

The **parties** signed this **contract** on the dates written below:

**You: Demirar Lowery**

DocuSigned by:

_(Seller's Signature)_

5/21/2024 | 11:59 AM PDT

_(Date)_

_(Sellers Spouse's Signature, if applicable)_

_(Date)_

**CBC SETTLEMENT FUNDING, LLC**

DocuSign Envelope ID: FAA065BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

**Exhibit A**

The following payments are to be transferred pursuant to this Agreement:

120 MONTHLY PAYMENTS OF $2,200.00 BEGINNING AUGUST 1, 2039 THROUGH AND INCLUDING JULY 1, 2049.

Any remaining unencumbered payments will remain payable to You.

*EXHIBIT "D"*

DocuSign Envelope ID: FAA065BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

## SCHEDULE 1
## DISCLOSURE STATEMENT

PLEASE BE ADVISED THAT THE PROPOSED TRANSACTION IS A SALE, NOT A LOAN. YOU ARE SELLING ALL OF YOUR RIGHTS, TITLE AND INTEREST TO THE ASSIGNED ANNUITY PAYMENTS UPON COMPLETION OF THIS TRANSACTION. THIS TRANSACTION MAY SUBJECT YOU TO ADVERSE FEDERAL AND STATE INCOME TAX. YOU SHOULD CONSULT WITH AN ATTORNEY, ACCOUNTANT, OR FINANCIAL ADVISOR REGARDING ANY FEDERAL OR STATE INCOME TAX IMPLICATIONS FROM THE PROPOSED TRANSACTION.

YOUR PURCHASE PRICE WAS CALCULATED AT A DISCOUNT RATE SIGNIFICANTLY HIGHER THAN THE PRIME INTEREST RATES CHARGED BY COMMERCIAL BANKS, THEREFORE, YOU SHOULD EXPLORE ALTERNATIVE FINANCIAL OPTIONS.

WE WILL PURCHASE FROM YOU: 120 MONTHLY PAYMENTS OF $2,200.00 BEGINNING AUGUST 1, 2039 THROUGH AND INCLUDING JULY 1, 2049.

THE AGGREGATE AMOUNT OF THE PURCHASED PAYMENTS IS $264,000.00.

THE GROSS AMOUNT PAYABLE TO SELLER IS: $25,000.00.

THE FOLLOWING EXPENSES ARE INCURRED BY THE SELLER (YOU) AND WILL BE DEDUCTED FROM THE PURCHASE PRICE:

COMPLIANCE AND ADMINISTRATIVE FEE: $0.00

FILING AND RELATED EXPENSES FEE: $0.00

THE NET AMOUNT PAYABLE TO THE SELLER (YOU) IS: $25,000.00.

NO OTHER EXPENSES ARE INCURRED BY YOU.

THE DISCOUNTED PRESENT VALUE OF PAYMENTS SHALL BE CALCULATED AS FOLLOWS: THE APPLICABLE FEDERAL RATE USED IN CALCULATING THE DISCOUNTED PRESENT VALUE IS 5.4%.

DocuSign Envelope ID: FAA065BE-9FF4-4673-A21C-371F5E5A19C3

THE DISCOUNTED PRESENT VALUE OF THE AGGREGATE PAYMENTS AT 5.4% IS $92,507.74. THE DISCOUNTED PRESENT VALUE IS THE CALCULATION OF THE CURRENT VALUE OF THE TRANSFERRED STRUCTURED SETTLEMENT PAYMENTS UNDER FEDERAL STANDARDS FOR VALUING ANNUITIES.

THE EFFECTIVE ANNUAL DISCOUNT RATE FOR THIS TRANSACTION IS 12.73%. THE CASH PAYMENT YOU RECEIVE IN THIS TRANSACTION FROM US WAS DETERMINED BY APPLYING THE SPECIFIED EFFECTIVE ANNUAL DISCOUNT RATE, COMPOUNDED MONTHLY, TO THE TOTAL AMOUNT OF FUTURE PAYMENTS TO BE RECEIVED BY US, LESS THE TOTAL AMOUNT OF COMMISSIONS, FEES, COSTS, EXPENSES AND OTHER CHARGES PAYABLE BY YOU.

THE NET AMOUNT THAT YOU WILL RECEIVE FROM US IN EXCHANGE FOR YOUR FUTURE STRUCTURED SETTLEMENT PAYMENTS REPRESENTS 27.02% OF THE ESTIMATED CURRENT VALUE OF THE PAYMENTS BASED UPON THE DISCOUNTED VALUE USING THE APPLICABLE FEDERAL RATE.

THE QUOTIENT OBTAINED BY DIVIDING THE NET PAYMENT BY THE DISCOUNTED PRESENT VALUE IS .27.02.

BASED ON THE NET AMOUNT THAT YOU WILL RECEIVE FROM US AND THE AMOUNTS AND TIMING OF THE STRUCTURED-SETTLEMENT PAYMENTS THAT YOU ARE TURNING OVER TO US, YOU WILL, IN EFFECT, BE PAYING INTEREST TO US AT A RATE OF 12.73% PER YEAR. THE NET AMOUNT PAID TO YOU (THE TRANSFEROR) BY US (THE TRANSFEREE) REPRESENTS AN ESTIMATE OF THE FAIR MARKET VALUE OF THE FUTURE PERIODIC PAYMENTS TRANSFERRED UNDER THE STRUCTURED SETTLEMENT AGREEMENT.

IF YOU WERE TO PURCHASE AN ANNUITY WITH COMPARABLE PAYMENTS TO THOSE BEING PURCHASED BY US, THE PREMIUM COST FOR SUCH COMPARABLE WOULD BE AS FOLLOWS:

NASSAU LIFE INSURANCE COMPANY:                     $      97.860.18

GUARDIAN LIFE INSURANCE COMPANY:              $     `102,574.81

NOTICE OF CANCELLATION RIGHTS:

DocuSign Envelope ID: FAA065BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

YOU MAY CANCEL THIS TRANSACTION NO LATER THAN THE TENTH (10th) DAY FOLLOWING THE DATE YOU EXECUTE THE DISCLOSURE STATEMENT OR PURCHASE AGREEMENT, WITHOUT PENALTY OR FURTHER OBLIGATION.

THIS CANCELLATION RIGHT CANNOT BE WAIVED IN ANY MANNER.

IN ORDER FOR THE CANCELLATION TO BE EFFECTIVE, YOU MUST PROVIDE WRITTEN NOTICE OF CANCELLATION TO US:

181 WASHINGTON ST., SUITE 375
CONSHOHOCKEN, PA 19428
ATTENTION: UNDERWRITING DEPARTMENT

IMPORTANT NOTICE: YOU ARE STRONGLY URGED TO CONSULT WITH AN ATTORNEY WHO CAN ADVISE YOU OF THE POTENTIAL TAX CONSEQUENCES OF THIS TRANSACTION.

YOU WILL BE RESPONSIBLE FOR LOSSES OR ACTUAL DAMAGES WE SUFFER AS A RESULT OF: YOUR BREACH OF THE CONTRACT, BECAUSE YOU MADE A FALSE OR INCOMPLETE REPRESENTATION OR WARRANTY. THERE ARE NO BROKERS COMMISSIONS, SERVICE CHARGES, APPLICATION FEES, PROCESSING FEES, CLOSING COSTS, FILING FEES, ADMINISTRATIVE FEES, LEGAL FEES, NOTARY FEES AND OTHER COMMISSIONS, FEES, COSTS, EXPENSES AND CHARGES PAYABLE BY YOU OR DEDUCTED FROM GROSS AMOUNT OTHERWISE PAYABLE TO YOU OTHER THAN THE COMPLIANCE AND ADMINISTRATIVE FEE AND THE FILING AND RELATED EXPENSES FEE. THESE DAMAGES SHALL NOT EXCEED $2,500.00.

IF YOU BELIEVE YOU WERE TREATED UNFAIRLY OR WERE MISLED AS TO THE NATURE OF THE OBLIGATIONS YOU ASSUMED UPON ENTERING INTO THIS AGREEMENT, YOU SHOULD REPORT THOSE CIRCUMSTANCES TO YOUR LOCAL DISTRICT ATTORNEY OR THE OFFICE OF THE ATTORNEY GENERAL.

THE EFFECTIVE DATE OF THE TRANSFER AGREEMENT SHALL BE DEEMED TO BE THE DATE THAT THE AGREEMENT WAS SIGNED BY THE YOU (PAYEE).

PLEASE BE ADVISED THAT PAYMENT TO YOU PURSUANT TO THE TRANSFER AGREEMENT IS CONTINGENT UPON COURT APPROVAL OF THE TRANSFER AGREEMENT.

DocuSign Envelope ID: FAA065BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

PLEASE BE ADVISED THAT PAYMENT TO YOU WILL BE DELAYED UP TO 30 DAYS OR MORE IN ORDER FOR THE COURT TO REVIEW AND APPROVE THE TRANSFER AGREEMENT.

BY SIGNING BELOW YOU ARE CONFIRMING RECEIPT OF THIS DISCLOSURE AT LEAST 10 DAYS PRIOR TO RECEIPT OF THIS CONTRACT.

DocuSigned by:

_____   Date: 5/21/2024 | 11:59 AM PDT

Demirar Lowery

*EXHIBIT "E"*

<u>AFFIDAVIT IN SUPPORT OF DEMIRAR LOWERY</u>

Demirar Lowery, being duly sworn, hereby deposes and says:

1.     I am of sound mind, sane, sober, not under the influence of drugs or alcohol, and am not suffering from any physical impairment affecting my judgment. Further, I have personal knowledge of the facts and documents stated and described herein.

2.     I am 38 years old, born on March 18, 1986. I am single with 2 minor children.

3.     I currently reside at 102 North St, Apt. 6, Middletown, NY 10940.

4.     I am not required to pay child support.

**5.**     That, because of a personal injury lawsuit, I became entitled to receive certain structured settlement payment rights, *to wit*, monthly payments until July 1, 2049. I signed a Sale and Assignment Agreement with CBC to sell a portion of the Periodic Payments. In particular, pursuant to the Sale and Assignment Agreement, I have agreed to sell my interest in the following Periodic Payments: 120 Monthly payments of $2,200.00 beginning August 1, 2039 through and including July 1, 2049 (the "Assigned Payments").

6.     That, in consideration for the sale and transfer of the Assigned Payments, I will receive the gross amount of $25,000.00 from CBC. I understand that I will be giving up my right to receive the Assigned Payments in the future in exchange for a lump sum payment from CBC.

7.     If the Court approves the proposed transaction, I will not continue to receive payments.

8.  I plan to use the proceeds from this transaction to pay for a new place to live for myself and my 2 young children. I recently lost my job and have fallen behind on my rent because of it. I do not have any family in Orange County, and my family is in Westchester. I moved to Orange County to provide a better life for myself and my children and was able to do so until I lost my job. I am in the process of getting another job but need to find new stable housing to stay in Orange county.

Please see Exhibit A for my current lease.

Please see Exhibit B for a letter from my current landlord.

Please see Exhibit C for apartments I am currently looking for in Orange County.

9.  Previous transfers: Yes

Have you previously filed a petition to transfer payment rights under the structured settlement that is the subject of this petition?   Yes

1.  In the Matter of the Petition of Allstate Settlement Corporation and Demirar Lowery, State of New York Supreme Court County of Westchester; Index No. 69301-2014 (Approved)

2.  In the Matter of the Petition of J.G. Wentworth Originations, LLC and Demirar Lowery, State of New York Supreme Court County of Westchester; Index No. 56670/2016 (Approved)

3.  In the Matter of and Application for Court Approval of the Sale and Transfer, State of New York Supreme Court County of Westchester; Index No. 50810/2017 (Denied)

4.  In the Matter of the Petition of Capital Source, LLC and Demirar Lowery, State of New York Supreme Court County of Westchester; Index No. 61643/2017 (Approved)

5.  In the Matter of Pine Trails Title, LLC and Demirar Lowery, State of New York Supreme Court County of Westchester; Index No. 65282/2020 (Denied)

6.  In the Matter of Pine Trails Title, LLC and Allstate Assignment Company, State of New York Supreme Court County of Westchester; Index No. 65282/2020 (Approved)

2

7. In the Matter of 2 Tenths Finance, LLC and Everlake Assignment Company, State of New York Supreme Court County of Westchester; Index No. 68792/2022 (Discontinued)

8. In the Matter of Limited X, LLC and Demirar Lowery, State of New York Supreme Court County of Westchester; Index No. 55061/2023 (Approved)

9. In the Matter of Limited X, LLC and Demirar Lowery, State of New York Supreme County of Orange; Index No. EF004450-2023 (Denied)

10. In the Matter of Limited X, LLC and D. Lowery, State of New York Supreme County of Orange; Index No. EF006540-2023 (Denied)

11. In the Matter of Labyrinth Funding, LLC and Demirar Lowery, State of New York Supreme County of Orange; Index No. EF008149-2023 (Denied)

10. I understand that the Court must grant permission and approve the sale and transfer of the Assigned Payments to CBC.

11. I strongly and verily believe that my decision to sell and transfer the Assigned Payments is in my best interest and that the funds I receive from this transaction can be better used today to provide for the foregoing, rather than for me to wait to receive the full value of payments several years from now.

12. I have considered other means of raising cash and, after weighing the available options, have determined that this transaction is the best course for me.

13. For these reasons, I feel it is in my best interest to sell the Assigned Payments to CBC, Inc. in exchange for an immediate lump sum payment.

14. I was provided with and have carefully reviewed copies of (i) the Sale and Assignment Agreement; and (ii) New York Disclosure Statement, as required by New York law. I carefully reviewed the Sale and Assignment Agreement and Disclosure Statement and fully understand all the terms set forth therein.

3

15.     As part of the separate written disclosure, I have been advised to seek independent professional advice in connection with the transfer. Accordingly, I have waived such a right to receive such independent professional advice.

16.     I understand the nature and terms of the transaction. I am entering into the transaction with CBC of my own free will and volition, and without reservation, duress, or undue influence.

17.     There are no additional beneficiaries under the annuity policy that would qualify as interested parties to this action entitled to receive notice under New York law.

18.     Based on the foregoing I respectfully request that the Court find that this transfer is in my best interests, grant the Petition of CBC, and authorize the sale and transfer of the Assigned Payments.

DocuSign Envelope ID: 33B103FE-8519-458A-80DC-A5DE00AAE50D

## VERIFICATION

I verify that the statements made in this affidavit are true and correct. I understand that false statements herein are made subject to the penalties of perjury relating to unsworn falsification to authorities.

DATE: 5/23/2024 | 7:35 AM PDT

Demirar Lowery

5

Exhibit A

# STANDARD RESIDENTIAL LEASE AGREEMENT

**I. THE PARTIES.** This Residential Lease Agreement ("Agreement") made this <u>March 18</u>, 20<u>23</u> is between:

**Landlord:** <u>Guavaproperty LLC</u> with a mailing address of <u>1015 Guymard Tpke</u>
City of <u>Otisville</u>, State of <u>NY</u>, ("Landlord"),

**AND**

**Tenant(s):** <u>Demirar Lowery</u> ("Tenant").

Landlord and Tenant are each referred to herein as a "Party" and, collectively, as the "Parties."

NOW, THEREFORE, FOR AND IN CONSIDERATION of the mutual promises and agreements contained herein, the Tenant agrees to lease the Premises from the Landlord under the following terms and conditions:

**II. LEASE TYPE.** This Agreement shall be considered a: (check one)

    ☐ - Fixed Lease. The Tenant shall be allowed to occupy the Premises starting on _____, 20_____ and end on _____, 20_____ ("Lease Term"). At the end of the Lease Term and no renewal is made, the Tenant: (check one)

        ☐ - May continue to lease the Premises under the same terms of this Agreement under a month-to-month arrangement.
        ☐ - Must vacate the Premises.

    ☒ - Month-to-Month Lease. The Tenant shall be allowed to occupy the Premises on a month-to-month arrangement starting on <u>April 1</u>, 20<u>24</u> and ending upon notice of <u>30</u> days from either Party to the other Party ("Lease Term"). Landlord reserves the right to terminate the lease any time without advance notice if Tenant delays rent for more than 15 days in any month.

**III. OCCUPANT(S).** The Premises is to be occupied strictly as a residential dwelling with the following individual(s) in addition to the Tenant: (check one)

    ☐ - <u>Demirar Lowery, Jahaziah Francis, Nasiah Lowery</u>, ("Occupant(s)").

    ☐ - There are no Occupant(s).

**IV. THE PROPERTY.** The Landlord agrees to lease the described property below to the Tenant: (enter the property information)

    a.) Mailing Address: <u>102 North St., Apt 6</u> City of <u>Middletown</u>, State of <u>New York 10940</u>.

b.) Residence Type: ☑ Apartment ☐ House ☐ Condo ☐ Other: _____
c.) Bedroom(s): 2
d.) Bathroom(s): 1

The aforementioned property shall be leased wholly by the Tenant ("Premises").

**V. PURPOSE.** The Tenant and Occupant(s) may only use the Premises as: (check one)

    ☑ - A residential dwelling only.

    ☐ - A residential dwelling and: _____.

**VI. FURNISHINGS.** The Premises is: (check one)

    ☐ - To be furnished with the following items: _____
_____.

    ☑ - Not furnished.

**VII. APPLIANCES.** The Landlord shall: (check one)

    ☑ - Provide the following appliances: Refrigerator, oven/range _____.

    ☐ - Not provide any appliances.

**VIII. RENT.** The Tenant shall pay the Landlord, in equal monthly installments,
$ 1790 ("Rent"). The Rent shall be due on the 1st of every month ("Due
Date") and paid under the following instructions: _electronically or as directed by landlord

**IX. NON-SUFFICIENT FUNDS (NSF CHECKS).** If the Tenant pays the Rent with a
check that is not honored due to insufficient funds (NSF): (check one)

    ☑ - There shall be a fee of $30 per incident.

    ☐ - There shall be no fee.

**X. LATE FEE.** If Rent is not paid on the Due Date: (check one)

    ☑ - There shall be a penalty of $50 due as ☑ One (1) Time Payment ☐ Every
Day Rent is Late. Rent is considered late when it has not been paid within 5
day(s) after the Due Date.

    ☐ - There shall be No Late Fee if Rent is late.

**XI. FIRST (1ST) MONTH'S RENT.** The Tenant is required to pay the first (1st) month's
rent: (check one)

☑ – Upon the execution of this Agreement.

☐ – Upon the first (1st) day of the Lease Term.

## XII. PRE-PAYMENT. The Tenant shall: (check one)

☐ – Pre-Pay Rent in the amount of $_____ for the term starting on _____, 20____ and ending on _____, 20____. The Pre-Payment of Rent shall be due upon the execution of this Agreement.

☑ – Not be required to Pre-Pay Rent.

## XIII. PRORATION PERIOD. The Tenant: (check one)

☐ – Shall take possession of the Premises before the start of the Lease Term on _____, 20____ and agrees to pay $_____ for the proration period. The proration rate is calculated by the monthly Rent on a daily basis which shall be paid by the Tenant upon the execution of this Agreement.

☐ – Shall not be taking possession of the Premises before the Lease Term.

## XIV. SECURITY DEPOSIT. As part of this Agreement: (check one)

☑ – The Landlord requires a payment in the amount of $ 1790.00 _____ ("Security Deposit") for the faithful performance of the Tenant under the terms and conditions of this Agreement. Payment of the Security Deposit is required by the Tenant upon the execution of this Agreement. The Security Deposit shall be returned to the Tenant within 14 ___ days after the end of the Lease Term less any itemized deductions. This Security Deposit shall not be credited towards any Rent unless the Landlord gives their written consent. Security Deposit will roll over from the previous lease

☐ – The Landlord does not require a Security Deposit as part of this Agreement.

## XV. MOVE-IN INSPECTION. Before, at the time of the Tenant accepting possession, or shortly thereafter, the Landlord and Tenant: (check one)

☑ – Agree to inspect the Premises and write any present damages or needed repairs on a move-in checklist.

☐ – Shall not inspect the Premises or complete a move-in checklist.

## XVI. PARKING. The Landlord: (check one)

☐ – Shall provide ____ parking space(s) to the Tenant for a fee of $_____ to be paid ☐ at the execution of this Agreement ☐ on a monthly basis in addition to the rent. The parking space(s) are described as:

_____.

☑ - Shall NOT provide parking.

**XVII. SALE OF PROPERTY.** If the Premises is sold, the Tenant is to be notified of the new Owner, and if there is a new Manager, their contact details for repairs and maintenance shall be forwarded. If the Premises is conveyed to another party, the new owner: (check one)

    ☐ - Has the right to terminate this Agreement by providing ___ days' notice to the Tenant.

    ☑ - Does not have the right to terminate this Agreement.

**XVIII. UTILITIES.** The Landlord shall provide the following utilities and services to the Tenant: ___Tenant will pay gas, electric, and water.___

Any other utilities or services not mentioned will be the responsibility of the Tenant.

**XIX. EARLY TERMINATION.** The Tenant: (check one)

    ☐ - Shall have the right to terminate this Agreement at any time by providing at least ___ days' written notice to the Landlord along with an early termination fee of $_____ (US Dollars). During the notice period for termination the Tenant will remain responsible for the payment of rent.

    ☑ - Shall not have the right to terminate this Agreement.

**XX. SMOKING POLICY.** Smoking on the Premises is: (check one)

    ☐ - Permitted ONLY in the following areas: _____

    ☑ - Prohibited on the Premises and Common Areas.

**XXI. PETS.** The Tenant: (check one)

    ☐ - Shall have the right to have

Tenant and Tenant's guests shall not smoke tobacco, marijuana, or any other substance, nor shall they use any illegal drugs or engage in any activity that produces smoke or noxious odors, within the rental unit or on the property. Tenant acknowledges that smoking and drug use can result in damage to the rental unit and agrees to bear the cost of any necessary cleaning or repairs. Tenant is responsible for ensuring that all guests are aware of and comply with this policy.

Allowed] that are not to weigh over ___ pounds. For the right to have pet(s) on the Premises the Landlord shall charge a fee of $_____ that is ☐ non-refundable ☐ refundable unless there are damages related to the pet. The Tenant is responsible for all damage that any pet causes, regardless of ownership of said pet and agrees to restore the Premises to its original condition at their expense.

    ☑ - Shall not have the right to have pets on the Premises or in the common areas.

**XXII. WATERBEDS.** The Tenant: (check one)

☐ - Shall have the right to use a waterbed on the Premises.

☒ - Shall not have the right to use a waterbed on the Premises.

**XXIII. NOTICES.** Any notice to be sent by the Landlord or the Tenant to each other shall use the following addresses:

**Landlord's / Agent's Address:**

1015 Guymard Tpke, Otisville, NY

**Tenant's Mailing Address:** (check one)

☒ - The Premises.

☐ - Other.

**XXIV. AGENT/MANAGER.** (check one)

☐ - The Landlord does have a manager on the Premises that can be contacted for any maintenance or repair at:

Name: _____

Telephone (____) _____-_____ E-Mail _____

☒ - The Landlord does not have a manager on the Premises although the Landlord can be contacted for any maintenance or repair at:

Sean Qui

Telephone (650 ) 448 -9191 E-Mail kevinchu20101010@gmail.com

**XXV. POSSESSION.** Tenant has examined the condition of the Premises and by taking possession acknowledges that they have accepted the Premises in good order and in its current condition except as herein otherwise stated. Failure of the Landlord to deliver possession of the Premises at the start of the Lease Term to the Tenant shall terminate this Agreement at the option of the Tenant. Furthermore, under such failure to deliver possession by the Landlord, and if the Tenant cancels this Agreement, the Security Deposit (if any) shall be returned to the Tenant along with any other pre-paid rent, fees, including if the Tenant paid a fee during the application process before the execution of this Agreement.

**XXVI. ACCESS.** Upon the beginning of the Proration Period or the start of the Lease Term, whichever is earlier, the Landlord agrees to give access to the Tenant in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises. Duplicate copies of the access provided may only be authorized under the consent of the Landlord and, if any replacements are needed, the

Landlord may provide them for a fee. At the end of this Agreement all access provided to the Tenant shall be returned to the Landlord or a fee will be charged to the Tenant or the fee will be subtracted from the Security Deposit.

**XXVII. SUBLETTING.** The Tenant shall not be able to sublet the Premises without the written consent from the Landlord. The consent by the Landlord to one subtenant shall not be deemed to be consent to any subsequent subtenant.

**XXVIII. ABANDONMENT.** If the Tenant vacates or abandons the Premises for a time-period that is the minimum set by State law or seven (7) days, whichever is less, the Landlord shall have the right to terminate this Agreement immediately and remove all belongings including any personal property off of the Premises. If the Tenant vacates or abandons the Premises, the Landlord shall immediately have the right to terminate this Agreement.

**XXIX. ASSIGNMENT.** Tenant shall not assign this Lease without the prior written consent of the Landlord. The consent by the Landlord to one assignment shall not be deemed to be consent to any subsequent assignment.

**XXX. RIGHT OF ENTRY.** The Landlord shall have the right to enter the Premises during normal working hours by providing at least twenty-four (24) hours notice in order for inspection, make necessary repairs, alterations or improvements, to supply services as agreed or for any reasonable purpose. The Landlord may exhibit the Premises to prospective purchasers, mortgagees, or lessees upon reasonable notice.

**XXXI. MAINTENANCE, REPAIRS, OR ALTERATIONS.** The Tenant shall, at their own expense and at all times, maintain premises in a clean and sanitary manner, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. The Tenant may not make any alterations to the leased premises without the consent in writing of the Landlord. The Landlord shall be responsible for repairs to the interior and exterior of the building. If the Premises includes a washer, dryer, freezer, dehumidifier unit and/or air conditioning unit, the Landlord makes no warranty as to the repair or replacement of units if one or **See note below.** all shall fail to operate. The Landlord will place fresh batteries in all battery-operated smoke detectors when the Tenant moves into the premises. After the initial placement of the fresh batteries it is the responsibility of the Tenant to replace batteries when needed. A monthly "cursory" inspection may be required for all fire extinguishers to make sure they are fully charged. The Landlord will repair all appliances if they are damaged by wear and tear. Tenant will take responsibility for any misuse of appliances.

**XXXII. NOISE/WASTE.** The Tenant agrees not to commit waste on the premises, maintain, or permit to be maintained, a nuisance thereon, or use, or permit the premises to be used, in an unlawful manner. The Tenant further agrees to abide by any and all local, county, and State noise ordinances.

**XXXIII. GUESTS.** There shall be no other persons living on the Premises other than the Tenant and any Occupant(s). Guests of the Tenant are allowed for periods not lasting for more than 48 hours unless otherwise approved by the Landlord in writing.

The landlord is responsible for ensuring a pest-free environment. The tenant is responsible for maintaining a clean living environment. If a pest infestation is caused by the tenant, the tenant can be requested to pay for the pest control. This includes activities like bringing a bed bug infestation into the house, a cockroach infestation after the tenant has moved in, and keeping the property unclean and attracting pests.

**XXXIV. COMPLIANCE WITH LAW.** The Tenant agrees that during the term of the Agreement, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the premises, or the use or occupancy thereof, whether said compliance shall be ordered or directed to or against the Tenant, the Landlord, or both.

**XXXV. DEFAULT.** If the Tenant fails to comply with any of the financial or material provisions of this Agreement, or of any present rules and regulations or any that may be hereafter prescribed by the Landlord, or materially fails to comply with any duties imposed on the Tenant by statute or State laws, within the time period after delivery of written notice by the Landlord specifying the non-compliance and indicating the intention of the Landlord to terminate the Agreement by reason thereof, the Landlord may terminate this Agreement. If the Tenant fails to pay rent when due and the default continues for the time-period specified in the written notice thereafter, the Landlord may, at their option, declare the entire balance (compiling all months applicable to this Agreement) of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to the Landlord at law or in equity and may immediately terminate this Agreement.

The Tenant will be in default if: (a) Tenant does not pay rent or other amounts that are owed; (b) Tenant, their guests, or the Occupant(s) violate this Agreement, rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (c) Tenant abandons the Premises; (d) Tenant gives incorrect or false information in the rental application; (e) Tenant, or any Occupant(s) is arrested, convicted, or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in the Premises or on the person of the Tenant, guests, or Occupant(s) while on the Premises and/or; (g) as otherwise allowed by law.

**XXXVI. MULTIPLE TENANT OR OCCUPANT(S).** Each individual that is considered a Tenant is jointly and individually liable for all of this Agreement's obligations, including but not limited to rent monies. If any Tenant, guest, or Occupant(s) violates this Agreement, the Tenant is considered to have violated this Agreement. Landlord's requests and notices to the Tenant or any of the Occupant(s) of legal age constitutes notice to the Tenant. Notices and requests from the Tenant or any one of the Occupant(s) (including repair requests and entry permissions) constitutes notice from the Tenant. In eviction suits, the Tenant is considered the agent of the Premise for the service of process.

**XXXVII. DISPUTES.** If a dispute arises during or after the term of this Agreement between the Landlord and Tenant, they shall agree to hold negotiations amongst themselves, in "good faith", before any litigation.

**XXXVIII. SEVERABILITY.** If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons,

entitles or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**XXXIX. SURRENDER OF PREMISES.** The Tenant has surrendered the Premises when (a) the move-out date has passed and no one is living in the Premises within the Landlord's reasonable judgment; or (b) Access to the Premises have been turned in to Landlord – whichever comes first. Upon the expiration of the term hereof, the Tenant shall surrender the Premises in better or equal condition as it were at the commencement of this Agreement, reasonable use, wear and tear thereof, and damages by the elements excepted.

**XL. RETALIATION.** The Landlord is prohibited from making any type of retaliatory acts against the Tenant including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

**XLI. WAIVER.** A Waiver by the Landlord for a breach of any covenant or duty by the Tenant, under this Agreement is not a waiver for a breach of any other covenant or duty by the Tenant, or of any subsequent breach of the same covenant or duty. No provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment to this Agreement and executed by the Tenant and Landlord.

**XLII. EQUAL HOUSING.** If the Tenant possesses any mental or physical impairment, the Landlord shall provide reasonable modifications to the Premises unless the modifications would be too difficult or expensive for the Landlord to provide. Any impairment(s) of the Tenant are encouraged to be provided and presented to the Landlord in writing in order to seek the most appropriate route for providing the modifications to the Premises.

**XLIII. HAZARDOUS MATERIALS.** The Tenant agrees to not possess any type of personal property that could be considered a fire hazard such as a substance having flammable or explosive characteristics on the Premises. Items that are prohibited to be brought into the Premises, other than for everyday cooking or the need of an appliance, includes but is not limited to gas (compressed), gasoline, fuel, propane, kerosene, motor oil, fireworks, or any other related content in the form of a liquid, solid, or gas.

**XLIV. INDEMNIFICATION.** The Landlord shall not be liable for any damage or injury to the Tenant, or any other person, or to any property, occurring on the Premises, or any part thereof, or in common areas thereof, and the Tenant agrees to hold the Landlord harmless from any claims or damages unless caused solely by the Landlord's negligence. It is recommended that renter's insurance be purchased at the Tenant's expense.

**XLV. COVENANTS.** The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

**XLVI. PREMISES DEEMED UNINHABITABLE.** If the Premises is deemed uninhabitable due to damage beyond reasonable repair the Tenant will be able to terminate this Agreement by written notice to the Landlord. If said damage was due to the negligence of the Tenant, the Tenant shall be liable to the Landlord for all repairs and for the loss of income due to restoring the Premises back to a livable condition in addition to any other losses that can be proved by the Landlord.

**XLVII. LEAD PAINT.** (check one)

☑ - The Premises was built prior to 1978 and there is an attachment titled the 'Lead-Based Paint Disclosure' that must be initialed and signed by the Landlord and Tenant.

☐ - The Premises was not built prior to 1978.

**XLVIII. GOVERNING LAW.** This Agreement is to be governed under the laws located in the State where the Premises is located.

**XLIX. ADDITIONAL TERMS AND CONDITIONS.** Tenant will provide rental insurance to the landlord before the occupancy date. Landlord will be allowed to show premises to new prospective tenants 30 days prior to vacating premises.

**L. ENTIRE AGREEMENT.** This Agreement contains all the terms agreed to by the parties relating to its subject matter including any attachments or addendums. This Agreement replaces all previous discussions, understandings, and oral agreements. The Landlord and Tenant agree to the terms and conditions and shall be bound until the end of the Lease Term.

**Landlord's Signature** _____ Date: 02/29/2024

Print Name: Ji Li

**Tenant's Signature** _____ Date: _____

Print Name: Demirar Lowery

**Tenant's Signature** _____ Date: 3/5/24

Print Name: _____

**Agent's Signature** _____ Date: _____

Print Name: _____

# AMOUNT ($) DUE AT SIGNING

Security Deposit: $_____

First (1st) Month's Rent: $_____

Parking Fee: $ 0 _____

Pet Fee(s): $ 0 _____

Pre-Payment of Rent: $0 _____

Proration Amount: $ _____

**Total Amount: $**

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**1. Lead Warning Statement**

Housing build before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and /or lead-based paint hazards in the dwelling. Tenants must also receive a federally approved pamphlet on lead poisoning prevention.

**2. Lessor's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐ - Known lead-based paint and/or lead-based paint hazards are present in the housing (explain): _____.

☑ - Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the landlord (check one below)

☐ - Landlord has provided the tenant with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

☑ - Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**3. Tenant's Acknowledgement**

☐ - Tenant has received copies of all information listed above.

☐ - Tenant has received the pamphlet "Protect Your Family From Lead in Your Home".

**4. Broker's Acknowledgement**

☐ - Broker has informed the tenant of the tenant's obligations under 42 USC 4852(d) and is aware of his/her responsibility to ensure compliance.

**5. Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

**Landlord's Signature** _____ Date: 02/29/2024

Print Name: _____

**Tenant's Signature** _____ Date: _____

Print Name: Demirar Lowery

**Tenant's Signature** _____ Date: 3 / 5 / 24

Print Name: _____

**Agent's Signature** _____ Date: _____

Print Name: _____

# Exhibit B

2024-05-13

To whom it may concern,

Demirar Lowery with her children are my tenants at 102 North St, #6, Middletown, NY 10940. Her monthly rent is $1790. Until today, she paid $523 for the May 2024 rent, and $1267 is the remaining balance unpaid.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Dr. Ji Li

Owner of Guavaproperty LLC
guavaproperty102@gmail.com

Exhibit C

New York / Orange County / Middletown / 9 Maryland Ave Unit 2A

C Today

# 9 Maryland Ave U...

Middletown, NY 10940
Middletown/Goshen

| Monthly Rent | Bedrooms | Bathrooms | Square Feet |
|---|---|---|---|
| $1,750 | 2 bd | 1 ba | 900 sq ft |

## Details

Available Now

\* Price shown is base rent and may not include non-optional fees and utilities. Price and availability is subject to change without notice.
\* Square footage definitions vary. Displayed square footage is approximate.



## About This Property

Move right in. Freshly painted.Hardwood floors throughout.New stove,Lots of attic space for storage. Close to shopping. Available immediately. Appointment required.

Based on information submitted to the MLS GRID as of (see last changed date above). All data is obtained from

5/23/24, 1:26 PM                    9 Maryland Ave Unit 2A, Middletown, NY 10940 - Room for Rent in Middletown, NY | Apartments.com

various sources and may not have been verified by broker or MLS GRID. Supplied Open House Information is subject
to change without notice. All information should be independently reviewed and verified for accuracy. Properties
may or may not be listed by the office/agent presenting the information. Some IDX listings have been excluded from
this website. Prices displayed on all Sold listings are the Last Known Listing Price and may not be the actual selling
price.

9 Maryland Ave is an apartment community located in Orange County and the 10940 zip
Code.

# Education

## Colleges & Universities                              Distanc

| Colleges & Universities | | Distance |
|---|---|---|
| Mount Saint Mary College | Drive: 36 min | 27.7 m |
| SUNY College at New Paltz | Drive: 50 min | 31.9 m |
| USMA, West Point | Drive: 50 min | 33.5 m |
| SUNY Rockland | Drive: 55 min | 41.7 m |

9 Maryland Ave Unit 2A is within 36 minutes or 27.7 miles
from Mount Saint Mary College. It is also near SUNY
College at New Paltz and USMA, West Point.

| Somewhat Walkable **68** |
|---|
| Walk Score®    Out of 100 |
| You might be able to get out and walk when living in this area. Some errands can be accomplished on foot, but for others you'll need a car. |

| Somewhat Bikeable **37** |
|---|
| Bike Score®    Out of 100 |
| You might be able to find places to ride your bike in this area, but you'll most likely want your car for most errands. |

| Active **76** |
|---|
| Soundscore™    Out of 100 |
| Traffic: Active | Airport: Calm | Businesses: Calm |

Scores provided by Walk Score ⓘ and HowLoud ⓘ



⚑ Report an Issue  /  🖶 Print  /  ⅄ Get Directions


Apartments.com™

f  X  ⊡  in  ♪  ▶  ⓒ  🔵



New York / Orange County / Middletown / 47     ↻ Today
John St Unit 1

# 47 John St Unit 1

Middletown, NY 10940
Middletown/Goshen

| Monthly Rent | Bedrooms | Bathrooms | Square Feet |
|---|---|---|---|
| $1,700 | 2 bd | 1 ba | 880 sq ft |

## Details

Available Jun. 1

* Price shown is base rent and may not include non-
optional fees and utilities. Price and availability is subject to
change without notice.
* Square footage definitions vary. Displayed square
footage is approximate.



## About This Property

Check out this 2 Bedroom,1 Bathroom Apartment nestled in the City of Middletown and in the Middletown School
District. This rental is located just off Route 211 and Route 17M,surrounded by a variety of community amenities
including local eateries,shopping centers,near parks,schools,a short drive to Orange County Community
College,Touro Medical College,Garnet Healthcare,near public transportation and near most major highways

including Interstate 84. The location is just the start, check out the amenities this rental has to offer starting with the kitchen with a plethora of cabinetry, stainless steel appliances, laminate hardwood flooring throughout, dining/living room area, cozy bedroom and full bathroom. This rental will not last long so don't delay, call now for your showing!!!

Based on information submitted to the MLS GRID as of (see last changed data above). All data is obtained from various sources and may not have been verified by broker or MLS GRID. Supplied Open House Information is subject to change without notice. All information should be independently reviewed and verified for accuracy. Properties may or may not be listed by the office/agent presenting the information. Some IDX listings have been excluded from this website. Prices displayed on all Sold listings are the Last Known Listing Price and may not be the actual selling price.

47 John St is an apartment community located in **Orange County** and the **10940** ZIP Code.

# Education

## Colleges & Universities                                    Distance

| | | |
|---|---|---|
| Mount Saint Mary College | Drive: 36 min | 27.4 m |
| SUNY College at New Paltz | Drive: 49 min | 31.2 m |
| USMA, West Point | Drive: 50 min | 33.4 m |
| SUNY Rockland | Drive: 55 min | 41.6 m |

47 John St Unit 1 is within 36 minutes or 27.4 miles from Mount Saint Mary College. It is also near SUNY College at New Paltz and USMA, West Point.

| Very Walkable | 89 |
|---|---|
| Walk Score® | Out of 100 |

If you enjoy walking, you'll enjoy renting in this area! It's a very walkable neighborhood.

| Somewhat Bikeable | 31 |
|---|---|
| Bike Score® | Out of 100 |

You might be able to find places to ride your bike in this area, but you'll most likely want your car for most errands.

| Active | 73 |
|---|---|
| Soundscore™ | Out of 100 |

| Traffic: | Airport: | Business: |
|---|---|---|
| Active | Calm | Active |

Scores provided by Walk Score ① and HowLoud ①

47 John St Unit 1, Middletown, NY 10940 - Room for Rent in Middletown, NY | Apartments.com

---

⚐ Report an Issue  /  🖶 Print  /  ⑂ Get Directions





New York / Orange County / Middletown / Crestwood Apartments          ⟳ 1 Week Ago

# Crestwood Apartments

⤴ ♡

92 Fitzgerald Dr, Middletown, NY 10940
Middletown/Goshen

★ ★ ★ ★ ☆  3.9 (4 reviews) ⌄        ⊘ Verified Listing

NORTHPOINT
MANAGEMENT

| Monthly Rent | Bedrooms | Bathrooms | Square Feet |
|---|---|---|---|
| $1,225 - $1,975 | Studio - 3 bd | 1 - 1.5 ba | 621 - 952 sq ft |

## Pricing & Floor Plans

### 2-Bedroom

$1,750 – $1,795

2 beds, 1 bath, 815 sq ft
12 Month Lease, **Available Now**

| Tour This Floor Plan |   📷 Photos

Show Floor Plan Details ⌄

### 2-Bedroom Large

$1,800 – $1,825

2 beds, 1 bath, 825 sq ft
Available Now

| Tour This Floor Plan |

Show Floor Plan Details ⌄

## About Crestwood Apartments

Discover tranquility and affordability at Crestwood Apartments in Middletown, NY

Nestled amidst the rolling hills of Middletown, NY, Crestwood Apartments offers a welcoming haven for those seeking comfortable living at an exceptional value. Whether you're a young professional, a family starting out, or a seasoned resident looking for a peaceful retreat, Crestwood Apartments has something for you.

Spacious and Serene Apartments:

Choose from a variety of thoughtfully designed studio, one-bedroom, and two-bedroom apartments, each boasting ample living space and plenty of storage.
Enjoy the fresh air and natural light streaming through oversized windows, creating a bright and inviting atmosphere.
Relax in your private balcony or patio, and savor the serene views of the surrounding greenery.
Convenient Location:

Crestwood Apartments is conveniently located minutes from Route 17 and I-84, providing easy access to major employers, shopping centers, and entertainment options in Middletown and beyond.
Enjoy the nearby shops and restaurants at Galleria at Crystal River, perfect for grabbing groceries, enjoying a night out, or catching a movie.
Take advantage of the numerous parks and recreational areas like Thrall Library and Heritage Trail, offering green spaces to unwind and explore.
Affordable Comfort:

Crestwood Apartments is committed to providing affordable living without compromising on quality.
Enjoy competitive rent prices and a variety of lease options to suit your needs.
Rest assured knowing that our on-site management team is always available to address your needs and ensure your comfort.
Additional Amenities:

Sparkling swimming pool to cool off and soak up the sunshine during the summer months.
Laundry facilities conveniently located within the community.
Ample off-street parking for residents and guests.
Pet-friendly community (restrictions may apply).
Come discover the charm of Crestwood Apartments in Middletown, NY. Contact us today to schedule a tour and experience the perfect blend of comfort, convenience, and affordability that awaits you.

Crestwood Apartments is an apartment community located in **Orange County** and the **10940** ZIP Code. This area is served by the **Middletown City** attendance zone.

## Amenities

Laundry Facilities
Maintenance on site
Property Manager on Site
24 Hour Access
Recycling
Pool
High Speed Internet Access
Air Conditioning
Heating
Cable Ready
Satellite TV
Tub/Shower
Dishwasher
Kitchen
Oven
Range
Refrigerator
Hardwood Floors
Carpet
Tile Floors
Vinyl Flooring
Dining Room
Views
Walk-in Closets
Linen Closet
Double Pane Windows
Balcony
Patio
Lawn

## Expenses

Recurring
Cat Rent    $30
Dog Rent    $50
One-Time
Application Fee    $10
Cat Fee    $300
Dog Fee    $500
Utilities Included
Gas, Water, Heat, Trash Removal, Sewer    Included

## Office Hours

| Monday | |
| Tuesday | |
| Wednesday | 9am - 4:30pm |
| Thursday | 9am - 4:30pm |
| Friday | 9am - 4:30pm |
| Saturday | Closed |
| Sunday | Closed |

# 845-412-9889

# Education

## Colleges & Universities

|  |  | Distance |
|---|---|---|
| Mount Saint Mary College | Drive: 35 min | 24.5 mi |
| SUNY College at New Paltz | Drive: 48 min | 30.1 mi |
| USMA, West Point | Drive: 49 min | 32.3 mi |
| SUNY Rockland | Drive: 54 min | 40.5 mi |

Crestwood Apartments is within 35 minutes or 24.5 miles from Mount Saint Mary College. It is also near SUNY College at New Paltz and USMA, West Point.

# Schools

**Public Schools**     Private Schools



### Pakanasink Elementary School
Public Elementary School

**4** Out of 10

Grades PK-5
418 Students

🎵 Nearby
✓ Property Identified

### C J Hooker Middle School
Public Middle School

**6** Out of 10

Grades 6-8
712 Students

🎵 Nearby
✓ Property Identified



### Middletown Twin Towers Middle Sc...
Public Middle School

**5** Out of 10

Grades 6-8
964 Students

👤 Attendance Zone

### Monhagen Middle School
Public Middle School

**3** Out of 10

Grades 6-8
852 Students

👤 Attendance Zone



### Goshen Central High School
Public High School

**6**



### Middletown High School
Public High School

**4** Out of 10

Grades 9-12
2,364 Students

👤 Attendance Zone

Crestwood Apartments - Apartments in Middletown, NY | Apartments.com

Grades 9–12
957 Students

-
Out of 10

🎒 Nearby

✔ Property Identified

School data provided by GreatSchools ⓘ

| Very Walkable | **71** |
| --- | --- |
| Walk Score® | Out of 100 |

If you enjoy walking, you'll enjoy renting in this area! It's a very walkable neighborhood.

| Minimal Transit | **0** |
| --- | --- |
| Transit Score® | Out of 100 |

| Somewhat Bikeable | **45** |
| --- | --- |
| Bike Score® | Out of 100 |

You might be able to find places to ride your bike in this area, but you'll most likely want your car for most errands.



| - | |
| --- | --- |
| Soundscore™ | Out of 100 |

| Traffic: | Airport: | Businesses: |
| --- | --- | --- |
| - | - | - |

Score provided by Walk Score ⓘ

⚑ Report an Issue / 🖶 Print / ⅄ Get Directions



🏠 Apartments.com™

f 𝕏 ⓘ in ♪ ▶ @ ⊕

NORTHPOINT
MANAGEMENT



*EXHIBIT "F"*

DocuSign Envelope ID: FAA065BE-9FF4-4673-A21C-371F5E5A19C3

CBC File # 57836

**Schedule 5**

*Please complete and sign.*

## STATEMENT OF PROFESSIONAL REPRESENTATION

**I HAVE BEEN ADVISED BY CBC SETTLEMENT FUNDING, LLC. THAT I SHOULD OBTAIN INDEPENDENT PROFESSIONAL REPRESENTATION REGARDING THE LEGAL, TAX AND FINANCIAL IMPLICATIONS OF THIS TRANSACTION, BUT I FULLY UNDERSTAND THE AGREEMENT AND EFFECTS OF THE TRANSACTION AND I DO NOT WISH TO SEEK OUT SUCH INDEPENDENT PROFESSIONAL REPRESENTATION.**

**OR**

☐ **I HAVE OBTAINED AN INDEPENDENT PROFESSIONAL ADVISOR & I FULLY UNDERSTAND THE LEGAL, TAX AND FINANCIAL IMPLICATIONS OF THE TRANSACTION IN THE PURCHASE AGREEMENT AND THE RELATED DOCUMENTS.**

---

### To Be Completed By Independent Professional Advisor

Name of Professional: _____

Phone Number: ( ) _____

Address: _____

_____

*I have provided independent professional advice to* _____ *in respect of the Sale and Assignment Agreement with CBC Settlement Funding, LLC and the transaction contemplated thereby.*

_____              _____/_____/_____

*Professional's Signature*                              *Date*

---

*I hereby acknowledge that the statement above is true and correct.*

Demifar Lowery

EXHIBIT "B"

SETTLEMENT AGREEMENT AND RELEASE

PLAINTIFFS:            VELDA LOWERY, AS LEGAL GUARDIAN FOR DEMIRAR
                       LOWERY AND VELDA LOWERY, INDIVIDUALLY


DEFENDANTS:            OSSINING UNION FREE SCHOOL DISTRICT, ROBERT J.
                       ROELLE, INDIVIDUALLY AND AS SUPERINTENDENT, AND
                       JOSHUA MANDEL, INDIVIDUALLY AND AS PRINCIPAL,
                       OSSINING HIGH SCHOOL


INSURER:              NEW YORK SCHOOLS INSURANCE RECIPROCAL


ASSIGNEE:             ALLSTATE ASSIGNMENT COMPANY


PAYMENT RECIPIENT:    DEMIRAR LOWERY


BENEFICIARY:          THE ESTATE OF DEMIRAR LOWERY


        This Settlement Agreement and Release ("Settlement Agreement") is made and entered into
this __ day of _____ 2003, by and between Plaintiffs, and Insurer, liability insurer for
Defendants.

RECITALS

        I.      On or about October 21, 2002, the Plaintiffs commenced an Action by service of a
summons and verified complaint (the "Complaint") upon the Defendants in the United States
District Court, Southern District of New York (Docket No. 02 CIV 8350 (JSR)).  The Plaintiffs
sought to recover monetary damages for alleged physical injuries to Demirar Lowery.

        II.     The Insurer is the liability insurer of the Defendants and as such would be obligated
to pay any judgment and/or settlement obtained against the Defendants which is covered by their
policies.

III.    The parties desire to enter into this Settlement Agreement in order to provide for certain payments in full settlement and discharge of all claims which are the subject of or might have been the subject of the Complaint, upon the terms and conditions set forth herein.

AGREEMENT

The parties hereto hereby agree as follows:

A.    Release and Discharge

In consideration of the payments called for herein, the Plaintiffs (sometimes referred to herein as "Releasors") hereby completely release and forever discharge the Defendants, the Insurer, the Ossining Union Free School District ("District"), past and present and future employees, including, but not limited to Franklyn Irvin, the Parties' attorneys, insurers, representatives and agents in both their official and individual capacities, the Board of Education, and the Board of Education's past, present and future members, employees, attorneys, insurers, representatives and agents both in their official and individual capacities, and said Parties' past, present and future officers, directors, stockholders, attorneys, insurers, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated (sometimes referred to herein as "Releasees" or "Released Parties"), of and from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, and whether for compensatory or punitive damages, which the Plaintiffs now have, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are the subject of the Complaint (and all related pleadings) including, without limitation, any and all known or unknown claims for bodily and personal injuries to Plaintiffs, or any future wrongful death claim of Plaintiffs' representatives, which have resulted or may result from the alleged acts or omissions of the Defendants.  This release, on the part of the Plaintiffs, shall be a fully binding and complete settlement between the Plaintiffs, the Defendants and the Insurer, their assigns and successors, save only the executory provisions of this Settlement Agreement.

B.    Payments

(i) In consideration of the release set forth above, the Insurer on behalf of the Defendants hereby agrees to pay the Plaintiffs the following sums in the following manner:

1. (a) An up-front payment of $292,289.71 payable to Harriton & Furrer, LLP, Plaintiffs' attorneys.

(b) An up-front payment of $6,956.29 payable to Velda Lowery as guardian of Demirar Lowery jointly with an officer of a bank pursuant to an Infant's Compromise Order dated _____.

2. Future periodic payments as set forth in EXHIBIT "A" attached hereto and made part of this agreement. The cost to the Defendants of the structured settlement portion of this settlement is Two Hundred Fifty Thousand Seven Hundred Fifty Four dollars ($250,754.00), disclosure of which has been required as a condition of settlement. No part of the sum being paid by the Defendants to provide future periodic payments as set forth in this Settlement Agreement may be paid directly to Plaintiffs, inasmuch as the court has determined that a structured settlement is in the best interest of the Plaintiffs and that said periodic payments constitute damages on account of physical injury or physical sickness in a case involving physical injury or physical sickness within the meaning of Section 104(a)(2) and 130(c) of the Internal Revenue Code of 1986, as amended.

(ii) All sums set forth herein constitute damages on account of physical injuries or physical sickness, within the meaning of section 104 (a)(2) and 130 (c) [as regards the future periodic payments] of the Internal Revenue Code of 1986, as amended.

(iii) It is understood and agreed that the Insurer on behalf of the Defendants shall pay a total of $299,246.00 in "up-front" payments (as outlined in para. B (i) (1) above). The Defendants have no notice or knowledge of any outstanding liens. In the event of the existence of any outstanding liens, it is understood and agreed that the Plaintiffs shall be responsible to satisfy any and all such liens and the Plaintiffs shall indemnify and hold the Defendants and the Insurer harmless from any and all claims made by lienholders, whether such claims have been made, or are in the future made.

(iv) It is understood and agreed that the Insurer on behalf of the Defendants shall take all reasonable steps to issue its up-front payment as described in para. B (i) (1) within 30 days from the date it receives all properly executed closing documents.

(v) The term "guaranteed" as it is used in Exhibit "A" hereto shall be construed to mean "payments that will be made whether the Plaintiff/Payee is alive or not at the time the payment is due." Should the Plaintiff/Payee expire prior to receipt of all payments described as "guaranteed", the remainder of the "guaranteed" payments shall be payable as set forth in section F below entitled "Plaintiff's Beneficiary".

C.    Plaintiff's Rights to Payments

The future periodic payments described in para. B (i) (2) above cannot be accelerated, deferred, increased or decreased by the Plaintiffs and no part of the payments called for herein or any specific assets of the Insurer are to be subject to execution of any legal process for any obligation of the Plaintiffs in any manner, nor shall the Plaintiffs have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part thereof, by assignment or otherwise. Any attempt by Plaintiffs to so assign, anticipate, pledge or encumber any annuity payments shall be null and void and shall not affect the Plaintiffs' rights to receive annuity

3



payments. Transfer of the periodic payments is thus prohibited by the terms of this structured settlement and may otherwise be prohibited or restricted under applicable law.


      D.     Right to Execute an Assignment of Liability

      It is understood and agreed by and between the parties hereto that Insurer has elected, as a matter of right and in its sole discretion, to assign its duties and obligations to make the future periodic payments as set forth in Exhibit "A" to Allstate Assignment Company ("Assignee"). Such assignment is hereby accepted by Plaintiffs without right of rejection and in full discharge and release of the duties and obligations of Insurer to make the future periodic payments set forth on Exhibit "A". The parties hereto expressly understand and agree that upon the assignment of its duties and obligations to make such future periodic payments being made by Insurer to Assignee pursuant to this agreement, all of the duties and responsibilities otherwise imposed upon Insurer by this agreement with respect to such future payments shall instead be binding solely upon Assignee. It is understood that Allstate Life Insurance Company shall guarantee the performance of the Allstate Assignment Company. The Plaintiffs further and fully recognize and agree that the Assignee shall be Plaintiffs' sole obligor with respect to the obligations assigned, and that all other releases that pertain to the liability of the Defendants, Insurer, and all Releasees shall thereupon become final, irrevocable and absolute.


      E.     Right to Purchase An Annuity

      Insurer or its Assignee may, for its own convenience, fund its obligation to make the future periodic payments under the terms of this agreement as set forth in Exhibit "A" through the purchase of an annuity from Allstate Life Insurance Company of New York. Neither Plaintiffs nor anyone acting on Plaintiffs' behalf: shall have any right of or incidence of ownership whatsoever in the annuity policy; shall have any right to accelerate or defer payments due from the Insurer or its Assignee; shall have any right to increase or decrease any payments due from the Insurer or its Assignee; shall have any other right of dominion or control of or over the annuity policy, which shall be owned exclusively by the Insurer or its Assignee. The Insurer and/or the Assignee may have Allstate Life Insurance Company of New York mail payments directly to the Plaintiff/Payee/ Payment Recipient.


      F.     Plaintiff's Beneficiary

      In the event of the death of Plaintiff/Payee/Payment Recipient, all payments specified in Exhibit "A" to be made by the Insurer or its Assignee pursuant to the provisions of this agreement that have not been paid as of the date of Plaintiff/ Payee/Payment Recipient's death, shall be continued to be paid on the dates specified therein to the Estate of Demirar Lowery or to any such person she may so designate on attaining age of majority. On attaining age of majority Payee may



request in writing that Assignee change the beneficiary designation under this Agreement. Assignee will do so but will not be liable, however, for any payment made prior to receipt of the request or so soon thereafter that payment could not reasonably be stopped. Plaintiff/Payee/ Payment Recipient or a duly authorized representative of the Plaintiff/Payee/Payment Recipient shall be responsible for maintaining accurate address and mortality information with the Insurer or its Assignee.

G.    Attorney's Fees

Each party hereto shall bear all attorney's fees and costs arising from the actions of its own counsel in connection with the Complaint, this Settlement Agreement, the Qualified Assignment, and all other matters and documents referred to herein including, but not limited to, the preparation and filing of all documents necessary, customary and/or appropriate to accomplish the dismissal of the Complaint with prejudice and without costs, and all related matters.

H.    Delivery of Stipulation of Discontinuance with Prejudice

Concurrently with the execution of this Settlement Agreement, counsel for the Plaintiffs shall deliver to counsel for the Defendants or counsel for the Insurer all appropriate documents necessary to accomplish the dismissal and discontinuance with prejudice of the civil action described in Recital "I" above. The Plaintiffs have authorized the Plaintiffs' attorneys to execute a Stipulation of Discontinuance with Prejudice on their behalf and hereby authorize counsel for the Defendants or counsel for the Insurer to file said stipulation with the Court and enter said dismissal as a matter of record.

I.    Indemnification

In further consideration of the payment set forth in this agreement, Plaintiffs agree to defend, indemnify and hold harmless the said Released Parties of and from any and all claims, demands, damages (including, but not limited to, general damages, special damages, and punitive damages), expenses, liabilities, actions, Third Party Claims, lawsuits, costs (including attorney's fees), judgments, liens, causes of action, claims for contribution and/or indemnification, and rights of action of every nature whatsoever by whomsoever asserted, arising out of, in connection with, or in any manner related to the alleged occurrence sued upon herein. Included in this hold harmless and indemnity provision are Plaintiffs' alleged damages from the alleged incident occurring from in or about October, 2000 to in or about February, 2002 and the alleged injuries, illness, losses, damages, costs (including attorney's fees) which they, their heirs, executors, administrators and assigns allegedly sustained and/or incurred as a result thereof, or which may be sustained in the future, and including, but not limited to, claims for reimbursement of any benefits or medical expenses which have been or may hereafter be paid to or on behalf of the Plaintiff, claims for



and/or relating to alleged loss of services, consortium, personal injury, property damage or loss or illness. This duty to so protect and indemnify Released Parties shall be at all times in force even if the incident occurring from in or about October, 2000 to in or about February, 2002 and alleged injuries, disabilities, damages, and losses referred to herein were caused, in whole or in part, by the fault, negligence or strict liability of Released Parties, or by any breach of express and/or implied warranties or duties on their part (which are specifically denied).

J.    Supplementary Documents

All parties to this Settlement Agreement and Release agree to execute any and all supplementary documents and to take all actions required to implement and to give full force and effect to the terms and intent of this agreement.

K.    General Release

The Plaintiffs hereby acknowledge and agree that the release set forth in Paragraph A hereof is a general release and Plaintiffs further expressly waive and assume the risk of any and all claims for damages which exist as of this date but of which the Plaintiffs do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiffs' decision to enter into this Settlement Agreement. The Plaintiffs further agree that Plaintiffs have accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact, and Plaintiffs assume the risk that the facts or law may be otherwise than Plaintiffs believe. It is understood and agreed to by the Parties that this settlement is a compromise of a disputed claim, and the payments are not to be construed as an admission of liability on the part of the Defendants. The Defendants deny any liability whatsoever, and specifically deny any wrongful conduct with regard to the Plaintiffs.

L.    Warranty of Capacity to Execute Agreement

The Plaintiffs represent and warrant that no other person or entity has or has had any interest in the claims, demands, obligations, or causes of action referred to in this Settlement Agreement except as otherwise set forth herein and that Plaintiffs have the sole right and exclusive authority to execute this Settlement Agreement and receive the sum or sums specified in it; and that Plaintiffs have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Settlement Agreement.

M.    Discharge of Obligation

The obligation assumed by the Assignee to make each Periodic Payment shall be fully discharged upon the mailing of a valid check or electronic funds transfer in the amount of such payment on or before the due date to the last address on record for the Payee or Beneficiary with the Annuity Issuer. If the Payee or Beneficiary notifies the Assignee that any check or electronic funds transfer was not received, the Assignee shall direct the Annuity Issuer to initiate a stop payment action and, upon confirmation that such check was not previously negotiated or electronic funds transfer deposited, shall have the Annuity Issuer process a replacement payment.

N.    Entire Agreement and Successors in Interest

This Settlement Agreement contains the entire agreement between the Plaintiffs, the Defendants, and the Insurer with regard to the matters set forth herein and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors, and assigns of each.

O.    Representation of Comprehension of Document

In entering into this Settlement Agreement, the Plaintiffs represent that Plaintiffs have read the terms of this Settlement Agreement and that those terms are fully understood and voluntarily accepted by Plaintiffs. In entering into this Settlement Agreement and Release, Plaintiffs have retained and consulted with Plaintiffs' own independent attorneys selected by Plaintiffs of Plaintiffs' own free will, and have fully and freely consulted with them on matters relating to this settlement and its terms and conditions. Plaintiffs acknowledge that this Settlement Agreement has been negotiated by the respective Parties through counsel. The Parties to this Agreement contemplate and intend that all payments set forth in Section B above constitute damages received on account of personal physical injuries or physical sickness, arising from the occurrence, within the meaning of Section 104 (a)(2) of the Internal Revenue Code of 1986, as amended. The Plaintiffs warrant, represent, and agree that the Plaintiffs are not relying on the advice of the Defendants, the Insurer or anyone associated with them, including their attorneys and the insurance broker placing the annuity contract, as to the legal, tax, financial or other (favorable or adverse) consequences of any kind arising out of this Settlement Agreement for which the Plaintiffs are advised to obtain independent professional advice. The Plaintiffs acknowledge that neither the Defendants nor its legal, insurance or structured settlement representatives may refer any advisor, attorney, or firm for such professional advice. Accordingly, the Plaintiffs hereby release and hold harmless the Defendants, the Insurer, and any and all counsel or consultants for the Defendants and the Insurer from any claim, cause of action, or other rights of any kind which the Plaintiffs may assert because of the legal, tax or other consequences of this Settlement Agreement. Plaintiffs represent and warrant that Plaintiffs have read and discussed this Settlement Agreement and Release fully with Plaintiffs' attorneys and fully understand its terms and conditions, and voluntarily accept them as Plaintiffs' own free and voluntary act.

7



P.    Governing Law

This Settlement Agreement shall be construed and interpreted in accordance with laws of the State of New York.

Q.    Multiple Counterparts

This Agreement may be executed by the parties in multiple counterparts (although not required) and all of such counterparts so executed shall collectively constitute this one Agreement and shall be deemed to establish this one Settlement Agreement.

R.    Miscellaneous

Plaintiffs agree that this Settlement Agreement shall not be offered, used or considered as evidence in any proceeding of any type against or involving the Defendants, the Insurer and/or any individual or entity set forth in Paragraph A of this Settlement Agreement, except to the extent necessary to enforce the terms of this Settlement Agreement.

S.    Captions and Paragraph Headings; Construction

Captions and Paragraph headings used in this Settlement Agreement are for convenience only and are not a part of this Settlement Agreement and shall not be used in construing it. The terms, conditions and other provisions of this Settlement Agreement have been negotiated between the parties, with each party having had the benefit of its own legal counsel. The construction and interpretation of any clause or provision of this Settlement Agreement shall be construed without regard to the identity of the party that prepared this Settlement Agreement, and no presumption shall arise as a result that this Settlement Agreement was prepared by one party or the other.

T.    Severability

In the event that any one or more of the provisions of this Settlement Agreement shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, the validity, legality and enforceability of the remaining provisions of this Settlement Agreement shall not in any way be affected or impaired thereby.

U.    Effectiveness

This Settlement Agreement shall become effective after the Court has approved the settlement and all of the parties have executed this Settlement Agreement.  By his or her signature below, each party represents and warrants that he or she has the full authority to bind the person, persons or entity for whom execution of this agreement is being made.


Executed this __ day of _____, 2003.


New York Schools Insurance Reciprocal

By _____
         Authorized Representative

_____
Velda Lowery, Individually
and as Legal Guardian for
"Jane Doe", an infant

9

ACKNOWLEDGEMENT:

STATE OF *New York* )
                    )    ss.:
COUNTY OF *Westchester* )

     On the *11th* day of *November* 2003 before me, the undersigned, personally appeared Velda Lowery, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within SETTLEMENT AGREEMENT and RELEASE, and acknowledged to me that she executed the same in her capacity, and that by her signature on SETTLEMENT AGREEMENT and RELEASE, the individual, or the person upon behalf of which the individual acted, executed the SETTLEMENT AGREEMENT AND RELEASE.

                                   _____
                                     Notary

KEITH S. HARRITON
Notary Public, State of New York
No. 4941697
Qualified in Westchester County
Commission Expires August 29, 2006

## EXHIBIT A – BENEFIT PAYMENTS

FOR: DEMIRAR LOWERY

BEGINNING 8/1/2004, $20,000.00 ANNUALLY GUARANTEED FOR 4 YEARS ONLY;

BEGINNING 8/1/2008, $300.00 MONTHLY GUARANTEED FOR 48 MONTHS ONLY;

BEGINNING 8/1/2011, $500.00 MONTHLY GUARANTEED FOR 36 MONTHS ONLY;

BEGINNING 8/1/2014, $700.00 MONTHLY GUARANTEED FOR 60 MONTHS ONLY;

BEGINNING 8/1/2019, $900.00 MONTHLY GUARANTEED FOR 60 MONTHS ONLY;

BEGINNING 8/1/2024, $1,200.00 MONTHLY GUARANTEED FOR 60 MONTHS ONLY;

BEGINNING 8/1/2029, $1,500.00 MONTHLY GUARANTEED FOR 60 MONTHS ONLY;

BEGINNING 8/1/2034, $2,500.00 MONTHLY GUARANTEED FOR 60 MONTHS ONLY;

BEGINNING 8/1/2039, $3,977.08 MONTHLY GUARANTEED FOR 120 MONTHS ONLY.

BENEFICIARY: THE ESTATE OF DEMIRAR LOWERY


ON ATTAINING AGE OF MAJORITY PAYEE MAY REQUEST IN WRITING THAT ASSIGNEE CHANGE THE BENEFICIARY DESIGNATION UNDER THIS AGREEMENT.  ASSIGNEE WILL DO SO BUT WILL NOT BE LIABLE, HOWEVER, FOR ANY PAYMENT MADE PRIOR TO RECEIPT OF THE REQUEST OR SO SOON THEREAFTER THAT PAYMENT COULD NOT REASONABLY BE STOPPED.

EXHIBIT "C"

# Uniform Qualified Assignment

"Claimant"        DEMIRAR LOWERY

"Assignor"        NEW YORK SCHOOLS INSURANCE RECIPROCAL

"Assignee"        ALLSTATE ASSIGNMENT COMPANY


"Annuity Issuer"        ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK

"Effective Date"    November 19, 2003

This Agreement is made and entered into by and between the parties hereto as of the Effective Date with reference to the following facts:

A.    Claimant has executed a settlement agreement or release dated _____, 2003 (the "Settlement Agreement") that provides for the Assignor to make certain periodic payments to or for the benefit of the Claimant as stated in Addendum No. 1 (the "Periodic Payments"); and

B.    The parties desire to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986 (the "Code").


**NOW, THEREFORE,** in consideration of the foregoing and other good and valuable consideration, the parties agree as follows:

1.    The Assignor hereby assigns and the Assignee hereby assumes all of the Assignor's liability to make the Periodic Payments. The Assignee assumes no liability to make any payment not specified in Addendum No. 1.

2.    The Periodic Payments constitute damages on account of personal injury or sickness in a case involving physical injury or physical sickness within the meaning of Sections 104(a)(2) and 130(c) of the Code.

3.    The Assignee's liability to make the Periodic Payments is no greater than that of the Assignor immediately preceding this

Agreement. Assignee is not required to set aside specific assets to secure the Periodic Payments. The Claimant has no rights against the Assignee greater than a general creditor. None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered.

4.    The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check in the amount specified to the address of record.

5.    This Agreement shall be governed by and interpreted in accordance with the laws of the State of NEW YORK.

6.    The Assignee may fund the Periodic Payments by purchasing a "qualified funding asset" within the meaning of Section 130(d) of the Code in the form of an annuity contract issued by the Annuity Issuer. All rights of ownership and control of such annuity contract shall be and remain vested in the Assignee exclusively.

7.    The Assignee may have the Annuity Issuer send payments under any "qualified funding asset" purchased hereunder directly to the payee(s) specified in Addendum No. 1. Such direction of payments shall be solely for the Assignee's convenience and shall not provide the Claimant or any payee with any rights of ownership or control over the "qualified funding asset" or against the Annuity Issuer.

8.  Assignee's liability to make the Periodic Payments shall continue without diminution regardless of any bankruptcy or insolvency of the Assignor.

9.  In the event the Settlement Agreement is declared terminated by a court of law or in the event that Section 130(c) of the Code has not been satisfied, this Agreement shall terminate. The Assignee shall then assign ownership of any "qualified funding asset" purchased hereunder to Assignor, and Assignee's liability for the Periodic Payments shall terminate.

10. This Agreement shall be binding upon the respective representatives, heirs, successors and assigns of the Claimant, the Assignor and the Assignee and upon any person or entity that may assert any right hereunder or to any of the Periodic Payments.


NEW YORK SCHOOLS INSURANCE RECIPROCAL

Assignor: _____

By _____
_____*Authorized Representative*_____

Title: _____


ALLSTATE ASSIGNMENT COMPANY

Assignee: _____

By: _____
_____*Authorized Representative*_____

Title: _____

# Addendum No.1
# Description of Periodic Payments

FOR: DEMIRAR LOWERY

BEGINNING 8/1/2004, $20,000.00 ANNUALLY GUARANTEED FOR 4 YEARS ONLY;

BEGINNING 8/1/2008, $300.00 MONTHLY GUARANTEED FOR 48 MONTHS ONLY;

BEGINNING 8/1/2011, $500.00 MONTHLY GUARANTEED FOR 36 MONTHS ONLY;

BEGINNING 8/1/2014, $700.00 MONTHLY GUARANTEED FOR 60 MONTHS ONLY;

BEGINNING 8/1/2019, $900.00 MONTHLY GUARANTEED FOR 60 MONTHS ONLY;

BEGINNING 8/1/2024, $1,200.00 MONTHLY GUARANTEED FOR 60 MONTHS ONLY;

BEGINNING 8/1/2029, $1,500.00 MONTHLY GUARANTEED FOR 60 MONTHS ONLY;

BEGINNING 8/1/2034, $2,500.00 MONTHLY GUARANTEED FOR 60 MONTHS ONLY;

BEGINNING 8/1/2039, $3,977.08 MONTHLY GUARANTEED FOR 120 MONTHS ONLY.

BENEFICIARY: THE ESTATE OF DEMIRAR LOWERY

ON ATTAINING AGE OF MAJORITY PAYEE MAY REQUEST IN WRITING THAT ASSIGNEE CHANGE THE BENEFICIARY DESIGNATION UNDER THIS AGREEMENT. ASSIGNEE WILL DO SO BUT WILL NOT BE LIABLE, HOWEVER, FOR ANY PAYMENT MADE PRIOR TO RECEIPT OF THE REQUEST OR SO SOON THEREAFTER THAT PAYMENT COULD NOT REASONABLY BE STOPPED.

Initials

Assignor:

Assignee:

EXHIBIT "D"

# Allstate Life Insurance Company of New York

A Stock Company - Home Office Address:  Hauppauge, New York  11788-5107

# Single Premium Immediate Certain Annuity

**CONTRACT**—This contract is issued to Allstate Assignment Company (called "AAC") in consideration of the application, a copy of which is attached, and the payment of the single premium.  The contract and the application are the entire contract.  All statements made in the application are representations and not warranties.  No statement will be used by us in defense of a claim or to void this contract unless it is in the signed application.  Only our officers may change this contract or waive a right or requirement.  No agent may do this.

Allstate Life Insurance Company of New York (called "we" or "us") will make the payments shown on Page 3 to the Measuring Life or other payee designated by AAC, provided that the Measuring Life is alive.  In addition, if the Measuring Life is not living, any payments shown on Page 3 will be made to the beneficiary.

This contract stops when all payments have been made.

**RIGHT TO CANCEL**—If AAC is not satisfied with this contract, it may be voided by returning it to Allstate Life Insurance Company of New York, Hauppauge, New York  11788-5107, or our agent.  AAC must notify us and return the policy by midnight of the 10th day after AAC receives it.  Notice given by mail is effective on being postmarked, properly addressed and postage prepaid.  We will return the single premium, less any payments already made, within 10 days after we receive the policy and notice.

This is a legal contract between AAC and us.  READ THIS POLICY CAREFULLY.

# COPY

Signed for ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK at our Home Office in Hauppauge, New York.

Michael J. Velotta
Secretary

Thomas J. Wilson
President

Page 1

NYLU216

# TABLE OF CONTENTS

Contract ...................................…………… 1
Right to Cancel ...................…............…… 1
Schedule of Payments ............…..………. 3
Measuring Life Information ......…...……..... 3
Contract Number ..................…....……....... 3
Owner ...................…..........…………........ 3

Issue Date .…...........................…...……… 3
Beneficiary ...................................……...... 4
Incontestability ............................……........ 4
Minimum Values.................……....…............ 4
Non-Participating ......…...…........….......... 4
Non-Assignable ….…….....…........……....... 4

Page 2



## SCHEDULE OF PAYMENTS

| Start Date | End Date | Amount | Frequency |
|---|---|---|---|
| 08/01/04 | 08/01/07 | $20,000.00 | Annually |
| 08/01/08 | 07/01/12 | $300.00 | Monthly |
| 08/01/11 | 07/01/14 | $500.00 | Monthly |
| 08/01/14 | 07/01/19 | $700.00 | Monthly |
| 08/01/19 | 07/01/24 | $900.00 | Monthly |
| 08/01/24 | 07/01/29 | $1,200.00 | Monthly |
| 08/01/29 | 07/01/34 | $1,500.00 | Monthly |
| 08/01/34 | 07/01/39 | $2,500.00 | Monthly |
| 08/01/39 | 07/01/49 | $3,977.08 | Monthly |

## ANNUITANT INFORMATION

| | **Name** | **Sex** | **Date of Birth** |
|---|---|---|---|
| **Measuring Life:** | Demirar Lowery | Female | |

| | | | |
|---|---|---|---|
| **Contract Number:** | SSNY00047A | **Owner:** | Allstate Assignment Company |
| **Issue Date:** | 11/19/03 | | |

# ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK

## Home Office: Hauppauge, New York 11788-5107

## Application for Single Premium Immediate Annuity

**1. Measuring Life**

Full Name:  Demirar Lowery     Phone: (   )

Address  c/o Velda Lowery 47 North Malcolm Street, Ossining, NY 10562

Social Security No  █████████     Date of Birth: ████████  Sex  F

**2. Joint Measuring Life** (if applicable)

Full Name:     Phone: (   )

Address

Social Security No     Date of Birth:     Sex

Relationship to Measuring Life

**3. Owner**

Full Name   Allstate Assignment Company     Phone: (   )

Address

**4. Payee** (will be Measuring Life if left blank)

Full Name     Phone: (   )

Address

Relationship to Measuring Life

**5. Payment Information** (Submit proof of age for life or joint life payments.)

| Start Date | Type (e.g., certain, life, lump sum, joint) | Amount | Number of Payments | Frequency of Payments |
|---|---|---|---|---|
| 8/1/2004 | certain | $20,000.00 | 4 | annually |
| 8/1/2008 | certain | $300.00 | 48 | monthly |
| 8/1/2011 | certain | $500.00 | 36 | monthly |
| 8/1/2014 | certain | $700.00 | 60 | monthly |
|  |  |  |  | (see attached) |

**6. Beneficiary** (will be Estate of Measuring Life if left blank)

Full Name     Phone: (   )

Address

Social Security No.     Relationship to Measuring Life

**7. Premium   $ 1 + valuable consideration**

The Applicant represents that all statements and answers on this Application are true to the best of his or her knowledge and belief and completely recorded herein.

Applicant  **ALLSTATE ASSIGNMENT COMPANY**
Owner     by _Demri Aul Doran_
Signature & Title     Date  12-05-03

NYLR115

**DEMIRAR LOWERY   SS# ███████**

PAYMENT INFORMATION (CON'T)

| 8/1/2019 | certain | $900.00   | 60  | monthly |
| 8/1/2024 | certain | $1,200.00 | 60  | monthly |
| 8/1/2029 | certain | $1,500.00 | 60  | monthly |
| 8/1/2034 | certain | $2,500.00 | 60  | monthly |
| 8/1/2039 | certain | $3,977.08 | 120 | monthly |

**BENEFICIARY**–Unless changed by AAC, the beneficiary is as named in the application.  If there is no beneficiary named or living, the beneficiary is the Measuring Life's estate.  For purposes of this section, "living" shall mean living on the earlier of:

1. The day we receive due proof of the Measuring Life's death; or

2. The 15th day past the Measuring Life's death.

Unless AAC states otherwise by irrevocably naming a beneficiary, AAC may change the beneficiary while the Measuring Life is alive.  A change must be made to us in writing.  The change must be acceptable to us.  Once we accept the change, it takes effect as of the day AAC signed the request.  Each change is subject to any payment we make or action we take before we accept it.

Any payments due a beneficiary will be paid on their specified due dates, and will not be commuted or paid in a lump sum.

**INCONTESTABILITY**—We may not contest this contract after it is issued.

**MINIMUM VALUES**—The payments provided by this contract are not less than the minimum values required by the state in which this contract is sold.

**NON-PARTICIPATING**—This contract does not pay dividends.

**NON-ASSIGNABLE**—Payments may not be anticipated, assigned or pledged as collateral.  Payment dates and amounts may not be changed, either to provide for earlier payment or longer deferral.  The contract has no cash surrender or policy loan value.

So far as the law allows, all payments to any person named by AAC to receive them are exempt from that person's creditors, debts and contracts, and from seizure or attachment by court order or other legal process.

Page 4

EXHIBIT "E"

SUPREME COURT-STATE OF NEW YORK
IAS PART-ORANGE COUNTY

Present:    HON. DAVID J. SQUIRRELL, J.S.C.

SUPREME COURT: ORANGE COUNTY

-----------------------------------------------------------X

CBC SETTLEMENT FUNDING LLC,

                Petitioner

      -against-

EVERLAKE ASSIGNMENT COMPANY f/k/a
ALLSTATE ASSIGNMENT COMPANY, WILSTON
REASSSURANCE LIFE COMPANY OF NEW YORK
f/k/a ALLSTATE LIFE INSURANCE COMPANY OF
NEW YORK, and DEMIRAR LOWERY

                Respondents

-----------------------------------------------------------X

To commence the statutory time
period for appeals as of right
(CPLR 5513[a]), you are advised
to serve a copy of this order, with
notice of entry, upon all parties.

Index No. EF004433-2024

**DECISION AND ORDER**

The following papers were read and considered on Petitioner's application, pursuant to General Obligations Law, Title 17, known as the Structured Settlement Protection Act ("SSPA").

Petition – Proposed Order to Show Cause – Exhibits A-E ……………………………... 1-3

By Order to Show Cause and Petition filed on June 4, 2024, Petitioner CBC Settlement Funding LLC ("CBC Settlement"), seeks judicial approval of a purchase contract between Wentworth and payee, Demirar Lowery ("Lowery") for the transfer of Lowery's structured settlement payments.    The Court declines to sign the instant Order to Show Cause for the reasons stated herein.

**<ins>Factual and Procedural Background</ins>**

A structured settlement agreement was created in connection with a personal injury lawsuit on behalf of Lowery.    Now, Petitioner CBC Settlement seeks judicial approval of a transfer and

1

FILED: ORANGE COUNTY CLERK 06/05/2024 02:10 PM
NYSCEF DOC. NO. 10
Case 7:24-cv-04668-NSR    Document 20-3    Filed 12/11/24    Page 94 of 105

INDEX NO. EF004433-2024
RECEIVED NYSCEF: 06/05/2024

assignment of structured settlement payment rights possessed by Lowery. The subject annuity is owned by Everlake Assignment Company and was issued by Wilton Reassurance Company Life Company of New York.

Specifically, Lowery, seeks to assign that portion of a structured settlement which will pay her $2,200.00 per month from August 1, 2039, up to and including July 1, 2049. The total aggregate value of these 120 payments is $264,000.00. The discounted present value of the aggregate purchased payments at the federal interest rate of 5.4% is $92,507.74. Lowery seeks to assign the proceeds for an immediate payment of $25,000.

Lowery is no stranger to this Court. This Court has denied the two most recent applications filed in September 2023 and November 2023. In these prior applications, Lowery sought to transfer certain payments in exchange for an immediate payment of approximately $22,000 to pay for auto repairs and credit card debt.

Now, less than a month after the Court denied the last application, Lowery is seeking a lump sum payment of $25,000 to help her secure new housing. In support of this quest, Lowery submitted her current lease which indicates that she is a month-to-month tenant starting April 1, 2024, at a monthly rate of $1,790.00 and the lease was signed March 5, 2024. Now just two months later, Lowery submits that she is behind on her rent, needs to this lump sum payment to secure new housing and submits proof of the new apartments she is looking at that have approximately the same monthly rent that she is expected to pay now.

Lowery submitted an affidavit, stating that she believes this transfer is in the best interest of herself and her 2 minor children.

This Court disagrees.

2

## Discussion/Legal Analysis

General Obligations Law §5-1706(b) mandates that the court, in deciding whether to approve an application for transfer of a structured settlement to a third party, determine that:

> "(b) the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents; and whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, are fair and reasonable. Provided the court makes the findings as outlined in this subdivision, there is no requirement for the court to find that an applicant is suffering from a hardship to approve the transfer of structured settlement payments under this subdivision..."

"In enacting the Structured Settlement Protection Act (SSPA), the legislature did not intend for courts to be mere rubber stamps for the proposed sale of structured settlement payments; rather, courts are intended to examine the various statutory criteria and determine whether the proposed sale will truly serve the best interest of selling payee." *Matter of 321 Henderson Receivables, L.P. v. Martinez*, 11 Misc 3d 892, 895 (Sup Ct, New York County 2006) quoting *Matter of Settlement Capital Corp. (Ballos)*, 1 Misc 3d 446 (Sup Ct, Queens County 2003). Rather, "[i]t has been the intent of the Legislature ... to place the court in a position of *in loco parentis* to ... payees, so as to ensure that the transactions are ... fair and reasonable [ ]." *Matter of Stone St. Originations, LLC v. Peterson*, 69 Misc 3d 1206(A)(Sup Ct, Queens County 2020) quoting *In re J.G. Wentworth Originations, LLC,* 33 Misc 3d 1234(A)(Sup Ct, Queens County 2011]). "This paternalistic purpose is designed to prevent individuals from doing anything 'foolish' with their money thereby leaving them without resources for the future." *Seneca One, LLP v DC Mayflower Assignment Corp.*, 34 Misc 3d 1236(A)(Bx County Sup Court 2012) quoting *Matter of 321 Henderson Receivables Origination LLC v. Lugo*, 23 Misc 3d 1138(A)(Sup Ct, Kings County 2009).

3

"The 'best interest' standard under the Structured Settlement Protection Act (SSPA) requires a case-by-case analysis to determine whether the proposed transfer of structured settlement payments, which were designed to preserve the injured person's long-term financial security, will provide needed financial rescue without jeopardizing or irreparably impairing the financial security afforded to the payee and his or her dependents by the periodic payments." *Matter of Settlement Capital Corp. (Ballos), supra at 455; Matter of J.G. Wentworth Originations, LLC v. Genworth Life Ins. Co. of N.Y.*, 68 Misc 3d 1206(A)(Sup Ct, Kings County 2020). "In considering applications made pursuant to the Structured Settlement Protection Act (SSPA), courts should employ a 'totality of the circumstances' test similar to what is used in family law matters." *Matter of 321 Henderson Receivables, L.P., supra.* This court does "not want payees to be lured into giving up their future financial security in order to pursue a short-term remedy of a lump sum payment." *Advance Funding, LLC v. Brennan*, 44 Misc 3d 1223(A)(Sup Ct, Queens County 2014).

The "'best interest' of payee under Structured Settlement Protection Act (SSPA) is a separate and independent consideration from whether the transaction is 'fair and reasonable,' as required by the SSPA." *In re Petition of Settlement Funding of New York L.L.C.*, 195 Misc 2d 721,725 (Sup Ct, Rensselaer County 2003). As indicated in the documentary support for this application, in exchange for total future payments of $264,000, Petitioner promises to pay Lowery $25,000. That figure represents only 27% of the $92,507.74 discounted present value of the aggregate purchased payments at the federal interest rate of 5.4%. The SSPA is designed to guard against transactions, such as this one, where the recipients of these long-term structure settlements are being "victimized by companies aggressively seeking the acquisition of their rights." *Matter of Settlement Capital Corp. (Ballos), supra* at 451.

4

In seeking this Court's approval, Lowery submits that the $25,000 lump sum would be used to secure new housing for herself and her 2 minor children. However, when the amount and duration of the guaranteed future payments are compared with the present lump sum payment of $25,000.00, it is clear, that Ms. Lowery is prepared to sell these future payments for a fraction of their worth. Furthermore, the repeated applications for payment transfers indicates to this Court that Lowery is unlikely to use the funds for the stated purpose of securing housing and that she does not fully grasp the terms and consequences of the proposed transfer. Lowery has chosen not to consult with an independent financial advisor or legal advisory, much to her own detriment.

Lowery has habitually applied for court approval for the transfer of settlement funds. This is now her 12th application to transfer her settlement funds. Five prior applications have been denied, and three of those five applications were made within the last year. On September 6, 2023, the Honorable Loren Williams found that these immediate lump sum payments did not secure Lowery's future financial stability and denied same. Similarly, by Court Orders dated January 24, 2024, and May 17, 2024, this Court, found that the transfer of Lowery's structure settlement payments were not in her best interest.

This Court having considered the totality of the circumstances, cannot approve a transfer of these funds resulting in a substantial loss of Lowery's assets to the detriment of herself and her children. Therefore, the Court declines to sign the Order to Show Cause.

5

Based on the foregoing, it is hereby

**ORDERED,** that Petitioner's application for an order approving the above-described

transfer of Ms. Lowery's structured settlement payments is denied.

The foregoing constitutes the decision and order of the court.

Dated: June 5, 2024
      Goshen, N.Y.

ENTER

_____
**HON. DAVID J. SQUIRRELL, J.S.C.**

TO:    SACCO & FILLAS, LLP (*via NYSCEF*)
       *Counsel for Petitioner*

       D. Lowery
       102 North Street, Apt 6
       Middletown, New York 10940

       Everlake Assignment Company
       8711 North Freeport Parkway
       Irving, Texas 765063

       Wilton Reassurance Company Life
       Company of New York
       8711 North freeport Parkway
       Irving, Texas 765063

6

SUPREME COURT-STATE OF NEW YORK
IAS PART-ORANGE COUNTY

Present:   HON. DAVID J. SQUIRRELL, J.S.C.

SUPREME COURT: ORANGE COUNTY

--------------------------------------------------------------X

LABYRINTH FUNDING LLC,

Petitioner,

-against-

DEMIRAR LOWERY, ALLSTATE LIFE INSURANCE
COMPANY OF NEW YORK, N/K/A WILTON
REASSURANCE LIFE COMPANY OF NEW YORK
and ALLSTATE ASSIGNMENT COMPANY, N/K/A
EVERLAKE ASSIGNMENT COMPANY,

--------------------------------------------------------------X

To commence the statutory time
period for appeals as of right
(CPLR 5513[a]), you are advised
to serve a copy of this order, with
notice of entry, upon all parties.

Index No. EF008149-2023

**DECISION AND ORDER**

The following papers were read and considered on a Petition to transfer portions of a
structured settlement.

Order to Show Cause – Pokalsky Petition, Lowery Affidavit - Exhibits A -F....................... 1-3
Pokalsky correspondence............................................................................. 4
Lowery notarized correspondence ................................................................. 5

Upon the foregoing papers, it is hereby,

ORDERED, that the Petition is denied.

**Factual and Procedural Background**

The Petition seeks judicial approval of a transfer and assignment of a portion of

structured settlement payment rights possessed by Demirar Lowrey.

The within application contains an affidavit from Ms. Lowery seeking this Court's

approval. However, subsequently, Ms. Lowery submitted notarized correspondence informing this

Court that she wished to "cancel" the transaction with Petitioner. She further requested that this

Court dismiss the Petition. Additionally, when this matter was heard in open court, Ms. Lowery

1

again stated that she no longer wished to proceed with this transaction, and instead wished to proceed with a different application bearing Orange County Index No.: EF006540-2023.

This Court deems Ms. Lowery's statements and submission to be a withdrawal of her affidavit. Thus, the within Petition is denied.

Based on the foregoing, it is hereby

**ORDERED,** that Petitioner's application for an order approving the transfer of a portion of Demirar Lowery's settlement proceeds is denied.

The foregoing constitutes the decision and order of the court.

Dated: January 24, 2024
Goshen, N.Y.

E N T E R

_____
HON. DAVID J. SQUIRRELL, J.S.C.

TO:    John Pokalsky, Esq.
       277 Broadway
       Suite 1405
       New York, New York 10007

       Dimirar Lowery
       102 North Street #6
       Middletown, New York 10940

       Allstate Assignment Company n/k/a
       Everlake Assignment Company
       777 Research Drive
       Lincoln, Nebraska 68501

       Allstate Life Insurance Company of New York n/k/a
       Wilton Reassurance Company Life
       Company of New York
       One Liberty Place
       1650 Market Street Suite 280
       Philadelphia, Pennsylvania 19102

2

SUPREME COURT-STATE OF NEW YORK
IAS PART-ORANGE COUNTY

Present:   HON. DAVID J. SQUIRRELL, J.S.C.

SUPREME COURT: ORANGE COUNTY

------------------------------------------------------------X

LIMITED X, LLC,

-against-

D. LOWERY, EVERLAKE ASSIGNMENT
COMPANY, and WILTON REASSURANCE LIFE
COMPANY OF NEW YORK

------------------------------------------------------------X

| | |
|---|---|
| | To commence the statutory time period for appeals as of right (CPLR 5513[a]), you are advised to serve a copy of this order, with notice of entry, upon all parties. |
| | Index No. EF006540-2023 |
| | **DECISION AND ORDER** |

The following papers were read and considered on a Petition to transfer portions of a structured settlement.

Order to Show Cause – Jensen Affirmation, Lowery Affidavit - Exhibits A -F................ 1-3
Jensen correspondence.................................................................................. 4

Upon the foregoing papers, it is hereby,

ORDERED, that the Petition is denied.

### **Factual and Procedural Background**

The papers were considered in connection with the instant application, pursuant to

General Obligations Law, Title 17, known as the Structured Settlement Protection Act ("SSPA").

Petitioner LIMITED X, LLC seeks judicial approval of a transfer and assignment of structured

settlement payment rights possessed by D. Lowrey. The subject annuity is owned by Everlake

Assignment Company and was issued by Wilton Reassurance Company Life Company of New

York.

1

Specifically, Lowery, seeks to assign that portion of a structured settlement which will pay her $2,200.00 per month from August 1, 2039 up to and including January 1, 2047. These 90 payments total $198,000.00. In exchange, Lowery would receive $22,150.00.

### Discussion/Legal Analysis

General Obligations Law §5-1706(b) mandates that the court, in deciding whether to approve an application for transfer of a structured settlement to a third party, determine that:

> "(b) the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents; and whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, are fair and reasonable. Provided the court makes the findings as outlined in this subdivision, there is no requirement for the court to find that an applicant is suffering from a hardship to approve the transfer of structured settlement payments under this subdivision…"

"In enacting the Structured Settlement Protection Act (SSPA), the legislature did not intend for courts to be mere rubber stamps for the proposed sale of structured settlement payments; rather, courts are intended to examine the various statutory criteria and determine whether the proposed sale will truly serve the best interest of selling payee." *Matter of 321 Henderson Receivables, L.P. v. Martinez*, 11 Misc 3d 892, 895 (Sup Ct, New York County 2006) quoting *Matter of Settlement Capital Corp. (Ballos)*, 1 Misc 3d 446 (Sup Ct, Queens County 2003). Rather, "[i]t has been the intent of the Legislature ... to place the court in a position of *in loco parentis* to ... payees, so as to ensure that the transactions are ... fair and reasonable [ ]." *Matter of Stone St. Originations, LLC v. Peterson*, 69 Misc 3d 1206(A)(Sup Ct, Queens County 2020) quoting *In re J.G. Wentworth Originations, LLC*, 33 Misc 3d 1234(A)(Sup Ct, Queens County 2011]). "This paternalistic purpose is designed to prevent individuals from doing anything 'foolish' with their money thereby leaving them without resources for the future." *Seneca One, LLP v DC Mayflower*

2

*Assignment Corp.*, 34 Misc 3d 1236(A)(Bx County Sup Court 2012) quoting *Matter of 321 Henderson Receivables Origination LLC v. Lugo*, 23 Misc 3d 1138(A)(Sup Ct, Kings County 2009).

"The 'best interest' standard under the Structured Settlement Protection Act (SSPA) requires a case by case analysis to determine whether the proposed transfer of structured settlement payments, which were designed to preserve the injured person's long-term financial security, will provide needed financial rescue without jeopardizing or irreparably impairing the financial security afforded to the payee and his or her dependents by the periodic payments." *Matter of Settlement Capital Corp. (Ballos), supra at 455;   Matter of J.G. Wentworth Originations, LLC v. Genworth Life Ins. Co. of N.Y.*, 68 Misc 3d 1206(A)(Sup Ct, Kings County 2020).   "In considering applications made pursuant to the Structured Settlement Protection Act (SSPA), courts should employ a 'totality of the circumstances' test similar to what is used in family law matters." *Matter of 321 Henderson Receivables, L.P., supra.*   This court does "not want payees to be lured into giving up their future financial security in order to pursue a short term remedy of a lump sum payment." *Advance Funding, LLC v. Brennan*, 44 Misc 3d 1223(A)(Sup Ct, Queens County 2014).

The "'best interest' of payee under Structured Settlement Protection Act (SSPA) is a separate and independent consideration from whether the transaction is 'fair and reasonable,' as required by the SSPA." *In re Petition of Settlement Funding of New York L.L.C.*, 195 Misc 2d 721,725 (Sup Ct, Rensselaer County 2003).

In seeking this Court's approval, Ms. Lowery submits that the $22,150.00 lump sum would be used to pay off $10,000.00 in credit card debt, as well as for major automobile repairs. The balance would be used to care for her special needs child and for her family.

3

However, when the amount and duration of the guaranteed future payments are compared with the present lump sum payment of $22,150.00, it is clear that Ms. Lowery is prepared to sell these future payments for a fraction of their worth.

Furthermore, Ms. Lowery has shown a pattern of repeatedly seeking court approval for the transfer of settlement funds.  Eight previous applications have been submitted, five were approved, two were denied and one was withdrawn.

Indeed, a mere 21 days prior to the filing of the within Petition, the Hon. Loren Williams, J.S.C., denied a very similar application in the matter bearing Orange County Index No.: EF004450-2023.

Finally, of paramount import, is that within the brief period of time that the current application was pending, yet another entity sought approval of a transfer affecting the same future payments in the matter bearing Orange County Index No.: EF008149-2023. Even though that application contained an affidavit from Ms. Lowery seeking approval, when that matter was heard in open court, Ms. Lowery clearly stated that she no longer wished to proceed with that transaction and still wished to proceed with the application in this matter. By separate Decision and Order, the Petition in the matter bearing Orange County Index No.: EF004450-2023 is also being denied.

This Court find that the transfer sought in the within Petition is not in Ms. Lowery's best interest.

Based on the foregoing, it is hereby

**ORDERED,** that Petitioner's application for an order approving the above-described transfer of Ms. Lowery's structured settlement payments is denied.

The foregoing constitutes the decision and order of the court.

4

Dated: January 24, 2024
       Goshen, N.Y.

**ENTER**

_____
**HON. DAVID J. SQUIRRELL, J.S.C.**

TO:    Donald W. Jansen, Esq.
        44 Court Street
        Suite 1217
        Brooklyn, New York 11201
        Counsel for Petitioner

        D. Lowery
        102 North Street, Apt 6
        Middletown, New York 10940

        Everlake Assignment Company
        8711 North Freeport Parkway
        Irving, Texas 765063

        Wilton Reassurance Company Life
        Company of New York
        8711 North freeport Parkway
        Irving, Texas 765063

5