UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CBC SETTLEMENT FUNDING, LLC,

                                     Case No. 7:24-cv-04668-NSR

                      Plaintiff(s),

           -against-

EVERLAKE ASSIGNMENT COMPANY f/k/a
ALLSTATE ASSIGNMENT COMPANY, WILTON
REASSURANCE LIFE COMPANY OF NEW YORK f/k/a
ALLSTATE LIFE INSURANCE COMPANY OF NEW
YORK, and DEMIRAR LOWERY,

                      Defendant(s).
-------------------------------------------------------------------X

---

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DEFENDANTS'
MOTION TO DISMISS**

---

Luigi Brandimarte, Esq.
SACCO & FILLAS, LLP
*Attorney(s) for Plaintiff*
31-19 Newtown Avenue
Seventh Floor
Astoria, New York 11102
(718) 269-2201
lbrandimarte@saccofillas.com

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................................1

Argument ...........................................................................................................................2

      I.      Plaintiff Has Standing to Bring the Instant Application in This Court ...................2

               A.     This Court Has Authority to Hear This Action Pursuant to Federal
                    Question Jurisdiction ...................................................................................2

               B.     This Court Has Authority to Hear This Action Pursuant to
                    Diversity Jurisdiction .................................................................................3

               C.     Plaintiff Has Alleged A "Case or Controversy" Sufficient to Invoke
                    the Jurisdiction of This Court ....................................................................3

      II.     The Anti-Assignment Language in the Settlement Agreement is
            Insufficient to Prevent the Assignment .................................................................4

Conclusion .........................................................................................................................8

## TABLE OF AUTHORITIES

**Cases**

Belge v. Aetna Casualty and Surety Company, 39 A.D.2d 295 (4th Dept. 1972)............................ 6

FMC Corp. v. Boesky, 852 F.2d 981, 993 (7th Cir. 1988) ............................................................. 3

Illescas 2003 N.Y. Slip Op. .......................................................................................................... 5

In re 321 Henderson Receivables Origination, LLC, 19 Misc. 3d 504, 506, 856 N.Y.S.2d 817
  (Sup. Ct. 2008)............................................................................................................................ 6

In re Lobello, 28 Misc. 3d 1203(A), 957 N.Y.S.2d 636 (Sup. Ct., Cortland Co., 2010) ............... 5

Macklowe v. 42nd Street Development Corp., 170 A.D.2d 388, 389 (1st Dept. 1991).................... 7

Matter of Settlement Capital Corp. (Illescas), 2003 N.Y. Slip Op. 30241(U) (Sup. Ct., N.Y. Co.)
  ................................................................................................................................................. 5, 7

Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 132 S. Ct. 740, 743, 181 L. Ed. 2d 881 (2012).. 2

Spinex Laboratories v. Blue Cross and Blue Shield, 622 N.Y.S.2d 154, 155 (3d Dept. 1995) ...... 7

Sullivan v. Int'l Fidelity Ins. Co., 465 N.Y.S.2d 235, 237-38 (2d Dept. 1983) ............................. 7

United States v. Bank of New York & Tr. Co., 296 U.S. 463, 479, 56 S. Ct. 343, 348, 8L. Ed. 331
  (1936)........................................................................................................................................... 2

**Statutes**

2002 N.Y. Sess. Laws Ch. 537 ...................................................................................................... 4

26 U.S.C. § 130(c)(2).................................................................................................................... 8

26 U.S.C. § 5891 ........................................................................................................... 1, 2, 4, 6, 8

26 U.S.C. § 5891(c)(1).................................................................................................................. 1

28 U.S.C. § 1332(a)(1).................................................................................................................. 3

Gen. Oblig. Law § 5-1701 ......................................................................................................... 1, 2

Gen. Oblig. Law § 5-1701(l)......................................................................................................... 1

Gen. Oblig. Law § 5-1701(r) ........................................................................................................ 1

Gen. Oblig. Law § 5-1706 ............................................................................................................ 7

Gen. Oblig. Law. § 5-1706(b) ................................................................................. 4

Insurance Law § 3212(d)(4) ................................................................................... 5

N.Y. Gen. Oblig. Law § 5-1705 ............................................................................ 2

**Other Authorities**

Letter from Earl S. Nesbitt to Gov. George Pataki, New York Bill Jacket, 2002 A.B. 6936, Ch. 537 ........................................................................................................................ 5

Staff of Joint Committee on Taxation, 107th Cong., General Explanation of Tax Legislation Enacted in the 107th Congress, Part Seven: Victims of Terrorism Tax Relief Act Of 2001 (Comm. Print 2003) ............................................................................................... 9

**Constitutional Provisions**

U.S. Const., Art. III ............................................................................................... 3

## <u>INTRODUCTION</u>

This is a special proceeding brought, pursuant to 26 U.S.C. § 5891, and the <u>New York Structured Settlement Protection Act</u>, Gen. Oblig. Law § 5-1701 et seq. ("SSPA"), seeking approval of the sale and transfer of certain structured settlement payment rights due under a structured settlement agreement, in accordance with the Applicable Acts. The application is brought in this Court pursuant to the provision of the SSPA allowing petitions for the approval of such transactions to be brought in the court which approved the structured settlement agreement. This Court had approved the structured settlement agreement in question, in the matter of <u>Velda Lowery, et al. v. Ossining Union Free School District, et al.</u>, 7:02-cv-8350 (S.D.N.Y. 2003).

As a result of said settlement, Demirar Lowery ("Transferor") became a beneficiary of certain structured settlement payments, which provided for a series of deferred cash payments under a "structured settlement" as defined in N.Y. Gen. Oblig. Law § 5-1701(l) and 26 U.S.C. § 5891(c)(1).

The Transferor seeks to sell, assign and transfer to the Petitioner, CBC Settlement Funding, LLC, its successors and/or assigns, certain payments remaining under their structured settlement agreement pursuant to the terms of a "transfer agreement" as defined in Gen. Oblig. Law § 5-1701(r). A condition of said Purchase and Sale Agreement that the transfer be approved by a court and under an order that must be recognized and honored by EVERLAKE, as the structured settlement obligor, and WILTON, as the annuity issuer. Such condition is necessary to comply with the SSPA and is not merely an attempt to bring this matter before the Court.

The proposed transfer seeks approval, as authorized by the Applicable Acts, for the sale and transfer of the following structured settlement payment rights (periodic payments): one hundred twenty (120) monthly payments of $2,200.00 each, beginning with the payment due and

payable on or about August 1, 2039, continuing through to and including the payment due and payable on or about July 1, 2049.

Upon information and belief, the Payee is not married, has two (2) minor children, and has no other dependents or beneficiaries under the structured settlement payment rights which are the subject of this proceeding.

## ARGUMENT

### I. PLAINTIFF HAS STANDING TO BRING THE INSTANT APPLICATION IN THIS COURT

#### A. This Court Has Authority to Hear This Action Pursuant to Federal Question Jurisdiction

The instant action does raise a federal question in that it implicates the provisions of 26 U.S.C. § 5891.

While 26 U.S.C. § 5891 specifies that an order is to be issued by an "applicable State court," Id., such language does not divest a federal court from exercising jurisdiction, where relevant: "[T]he grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive" Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 132 S. Ct. 740, 743, 181 L. Ed. 2d 881 (2012), United States v. Bank of New York & Tr. Co., 296 U.S. 463, 479, 56 S. Ct. 343, 348, 8L. Ed. 331 (1936).

In the instant case, an applicable state statute exists, the New York Structured Settlement Protection Act, N.Y. Gen. Oblig. Law § 5-1701, et seq. The statute allows the transfer to be approved "in any court which approved the structured settlement agreement." N.Y. Gen. Oblig. Law § 5-1705.

Here, this Court approved the structured settlement in question, in the action Velda Lowery, et al. v. Ossining Union Free School District, et al., 7:02-cv-8350 (S.D.N.Y. 2003), and thus maintains jurisdiction over any modification of the order that may become necessary.

2

Therefore, because this action concerns a federal court order, along with the implications of a federal statute, it is a federal question.

**B.  This Court Has Authority to Hear This Action Pursuant to Diversity Jurisdiction**

Under 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists where no Plaintiff is a citizen of the same state as any defendant, and the amount in controversy exceeds $75,000.00. The same jurisdiction is provided for in U.S. Const., Art. III.

A diversity case would constitute a controversy for the purposes of federal court jurisdiction even if all of the claims are pursuant to state law:

> For example, the "actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" The same must also be true of legal rights growing out of state law. If not, federal courts sitting in diversity could not adjudicate some cases involving only state-law breach-of-fiduciary duty claims, which they often do, because some actions for breach of fiduciary duty do not require the plaintiff to show an injury. In such a case, the actual or threatened injury required by Article III exists solely by virtue of the recognized state-law right, the invasion of which creates standing. Properly pleaded violations of state-created legal rights, therefore, must suffice to satisfy Article III's injury requirement.

FMC Corp. v. Boesky, 852 F.2d 981, 993 (7th Cir. 1988) (internal citation omitted). Here, the only plaintiff, CBC Settlement Funding, LLC, is a resident of Pennsylvania, and none of the defendants are resident in Pennsylvania, satisfying the diversity requirement. Defendants Everlake and Wilton gloss over this fact in their motion, confining their analysis of the implications of diversity jurisdiction to a mere footnote. While the complaint does allege both a federal question and diversity, either one is sufficient to maintain jurisdiction.

There is no dispute here that there is complete diversity of citizenship, and that the amount in dispute exceeds the statutory minimum.

**C.  Plaintiff Has Alleged A "Case or Controversy" Sufficient to Invoke the Jurisdiction of This Court**

Contrary to the assertion of Defendants Everlake and Wilton, Plaintiff does not seek a mere advisory opinion in this matter. Plaintiff seeks a determination of the court that permits the proposed transfer, pursuant to both the Internal Revenue Code, 26 U.S.C. § 5891, and the SSPA. The controversy exists and Plaintiff's injury is because Defendants Everlake and Wilton would not acquiesce to the transaction in the absence of judicial intervention, which in any event they would require. If 26 U.S.C. § 5891 had not been enacted by Congress, Plaintiff would have standing by Defendants' refusal to acquiesce in the transaction.

## II.  THE ANTI-ASSIGNMENT LANGUAGE IN THE SETTLEMENT AGREEMENT IS INSUFFICIENT TO PREVENT THE ASSIGNMENT

The Structured Settlement Protection Act ("SSPA"), 2002 N.Y. Sess. Laws Ch. 537 (A. 6936-A) (McKinney), was enacted by the New York State Legislature in 2002.

Prior to the enactment of the SSPA, judicial oversight of the sale of structured settlement payments was not required.

Following the enactment of the SSPA, it became necessary for the court to determine, *inter alia*, if the transfer was "in the best interests of the payee, taking into account the welfare and support of the payee's dependants [sic] . . . " Gen. Obl. Law. § 5-1706(b).

The legislative history of the SSPA shows that the reflexive denial of transfers due to anti-assignment language was not intended:

> The Lack/Weprin bill was carefully drafted to work in conjunction with HR 2884 and, together with this recent Federal legislation, it insures that tax consequences and double liability issues can no longer be used to deny New York consumers the right to deal with their property, provided that there is compliance with the Act. As a result, New York consumers can pursue these transactions in a uniform manner and New York state courts can determine, in

relatively short order, whether the transaction is appropriate, complies with the Act, and is in the best interest of the consumer.

Letter from Earl S. Nesbitt to Gov. George Pataki, New York Bill Jacket, 2002 A.B. 6936, Ch. 537.

The Attorney General also noted that "The court can approve the transfer only if it is found to be in the best interest of the individual who is agreeing to the transfer, taking into account the welfare and support of the individual's dependents." Letter from New York Attorney General, 2002 A.B. 6936, Ch. 537.

Importantly, the SSPA added Title 17 to Article 5 of the General Obligations law, and amended New York's Insurance Law, adding a new paragraph (4) to section 3212(d) thereto, which paragraph reads as follows:

> The benefits, rights, privileges or options accruing under an annuity contract funding a structured settlement *which would otherwise be nontransferable under this subsection* may be transferred in accordance with title seventeen of article five of the general obligations law. As used in this paragraph the term "structured settlement" means an arrangement for periodic payments of damages for personal injuries established by settlement or judgment in resolution of a tort claim; and the term "periodic payments" shall include scheduled future lump sum payments.

Insurance Law § 3212(d)(4) (emphasis added).

While the SSPA did not bar the enforcement of anti-assignment language, it "change[d] the context in which such provisions should be considered. Matter of Settlement Capital Corp. (Illescas), 2003 N.Y. Slip Op. 30241(U) (Sup. Ct., N.Y. Co.). *To wit*, the Illescas court found that where a payee shows a true hardship and given "respondent's failure to advance any material unprotected interest in preventing the transfer", Id., that "enforcement of the anti-transfer provision would be an unreasonable restraint." Id. See also In re Lobello, 28 Misc. 3d 1203(A), 957 N.Y.S.2d 636 (Sup. Ct., Cortland Co., 2010), citing Illescas 2003 N.Y. Slip Op.

Indeed, with the passage of 26 U.S.C. § 5891 in 2002, the U.S. Congress made it abundantly clear – by way of clarification of existing law – that, notwithstanding anti-assignment provisions contained in a "structured settlement agreement", structured settlement payment rights could be transferred, no adverse tax consequence would attach to the annuitant (payee) or annuity issuer or structured settlement obligor, and only a factoring company would be subjected to an excise tax if a transfer was consummated without a Court's prior approval.

By now, all 50 states and the District of Columbia have enacted largely identical acts, all of which were intended to comply with the provisions of 26 U.S.C. § 5891, which imposed an excise tax on sales of structured settlements, unless such transfers are approved pursuant to such a statute. Thus, a transfer complies with 26 U.S.C. § 5891 if it "does not contravene any Federal or State statute or the order of any court or responsible administrative authority" Id.

To the extent that Courts have denied transfers of structured settlement payments due to contract provisions, such denials were uniformly based on pre-existing contract principles. In re 321 Henderson Receivables Origination, LLC, 19 Misc. 3d 504, 506, 856 N.Y.S.2d 817 (Sup. Ct. 2008). To that end, case law regarding non-assignment principles from **prior** to the enactment of the SSPA would remain relevant, particularly in interpreting an annuity contract entered into in 2000, which was also before the enactment of the SSPA and could not have anticipated its provisions.

Thus, it remains valid that long-standing New York law holds that non-assignment provisions must (i) clearly and unequivocally state what the consequences of an assignment are and, (ii) unequivocally and in the plainest terms possible declare the invalidity of any assignment if made can invalidate or prohibit the assignment itself. See Belge v. Aetna Casualty and Surety Company, 39 A.D.2d 295 (4th Dept. 1972); Macklowe v. 42nd Street Development Corp., 170

A.D.2d 388, 389 (1ˢᵗ Dept. 1991), <u>Sullivan v. Int'l Fidelity Ins. Co.</u>, 465 N.Y.S.2d 235, 237-38 (2d Dept. 1983); <u>and</u> <u>Spinex Laboratories v. Blue Cross and Blue Shield,</u> 622 N.Y.S.2d 154, 155 (3d Dept. 1995).

Thus, it follows that ***either:***

the pre-2002 New York caselaw (which caselaw is still valid and has not been overruled) that holds that anti-assignment language must clearly and unequivocally state the consequences of the assignment and unequivocally and plainly declare the invalidity of any assignment in order to prohibit or preclude a proposed transfer, or that the SSPA changes this calculus and any structured settlement payments rights which would otherwise be non-transferrable because of anti-assignment language may be transferred if done in accordance with the SSPA.

In either case, the Court should allow the proposed transfer to move forward and adjudicated in accordance with the SSPA since the anti-assignment language at issue does not meet the standard required to prohibit the sale and transfer proposed, as the only language therein is a bare prohibition on assignment with no language explaining the consequences of the assignment.

While Defendants oppose the Petition, do not actually "advance any material unprotected interest in preventing the transfer." <u>Illescas</u>, 2003 N.Y. Slip Op., <u>supra</u>. Defendants' opposition to the Petition is silent as to why they would oppose the Petition (with regard to that portion of its opposition regarding the anti-assignment language), and it appears that the opposition is based on the mere fact that it can do so.

While Gen. Oblig. Law § 5-1706 was amended in 2004[1], allowing transfers to take place without requiring the Court to make a finding of true hardship, this does not change the circumstances herein and the applicability of <u>Illescas</u>, 2003 N.Y. Slip Op., <u>supra</u>.

---

[1] 2004 Sess. Laws of N.Y. Ch. 480 (A. 11677) (McKinney).

Here, the anti-assignment language was not something bargained for by Ms. Lowery, or her guardian at the time, it was specifically inserted in order to comply with the provisions of 26 U.S.C. § 130(c)(2), which was necessary in order to comply with the tax benefits provided under such section, requiring that "such periodic payments cannot be accelerated, deferred, increased, or decreased by the recipient of such payments" Id. 26 U.S.C. § 5891, supra, was specifically enacted to allow such transfers, notwithstanding any language in an annuity contract necessary to comply with 26 U.S.C. § 130(c)(2):

> [I]t is understood that contracts under structured settlement arrangements generally contain anti-assignment clauses. It is understood, however, that injured persons may nonetheless be willing to accept discounted lump sum payments from certain "factoring" companies in exchange for their payment streams. The tax effect on the parties of these transactions may not have been completely clear under prior law.

STAFF OF JOINT COMMITTEE ON TAXATION, 107TH CONG., GENERAL EXPLANATION OF TAX LEGISLATION ENACTED IN THE 107TH CONGRESS, PART SEVEN: VICTIMS OF TERRORISM TAX RELIEF ACT OF 2001 (Comm. Print 2003).

Based on the foregoing, therefore, it is respectfully submitted that the motion should be denied, that the rote anti-assignment language included in the annuity contract should be disregarded, that this Court should entertain the petition on its merits, and the proposed sale and transfer should be approved.

## <u>CONCLUSION</u>

For the reasons stated herein, and in view of the arguments and proofs submitted herewith, it is submitted that the instant motion should be denied.

Dated:  Astoria, New York
        November 20, 2024

                                        Respectfully submitted,


                                        /s/ Luigi Brandimarte
                                        Luigi Brandimarte, Esq.
                                        SACCO & FILLAS, LLP
                                        *Attorney(s) for Plaintiff*
                                        31-19 Newtown Avenue
                                        Seventh Floor
                                        Astoria, New York 11102
                                        (718) 269-2201
                                        lbrandimarte@saccofillas.com